■ RICHARD SHERRILL, Appellant-Respondent, v GRAYCO BUILDERS, INC., et al., Appellants, and HOUSING PRESERVATION AND DEVELOPMENT DEPARTMENT OF THE CITY OF NEW YORK, Respondent. RICHARD SHERRILL, Appellant, v GRAYCO BUILDERS, INC., et al., Respondents, and LOUIS E. YAVNER, Appellant. RICHARD SHERRILL ASSOCIATES, Third-Party Defendant-Appellant, et al., Third-Party Defendants. RICHARD SHERRILL, Respondent, v RIVERSIDE PARK COMMUNITY (STAGE 1), INC., et al., Appellants, and LÓUIS E. YAVNER et al., Respondents, et al., Defendants. — Appeal from an order entered October 1, 1982 in Supreme Court, New York County (Fritz W. Alexander, J.), unanimously dismissed as moot in light of the subsequent lawsuit involving all the parties, without costs. ¶ Appeals from two orders entered July 20, 1983 in Supreme Court, New York County (Ira Gammerman, J.) which, respectively, denied plaintiff's motion to renew and reargue, and denied plaintiff's motion to vacate the order entered July 1, 1983 in the same court, deemed a motion to reargue, dismissed as nonappealable. ¶ Order entered July 1, 1983 in Supreme Court, New York County (Ira Gammerman, J.), which, *inter alia,* denied plaintiff's motion to stay certain arbitrations, unanimously modified, on the law and the facts and in the exercise of discretion, to the extent of permanently staying all arbitration, vacating the stay of judicial proceedings granted in that order, and granting defendant Yavner's motion to consolidate the action with two other actions indexed in Supreme Court as Nos. 10987/1980 and 10988/1980, and the order is otherwise affirmed, without costs. ¶ Order entered April 4, 1983 in Supreme Court, New York County (Seymour Schwartz, J.), is unanimously affirmed, without costs. Further, on its own

motion this court orders all actions involved in the above appeals consolidated into one action, with leave to all parties to serve, within 30 days of this order, amended pleadings reflecting such consolidation of all the issues and actions. ¶ Richard Sherrill, Louis Yavner and Daniel Gray have worked together for almost 20 years. Individually or through corporate entities created by them, the three have developed a number of housing projects in New York City. In December of 1972 the three[1] created and entered into a partnership agreement with Riverside Park Community (Stage 1), Inc. (hereinafter RPC), a corporation they organized under article II of the Private Housing Finance Law. That partnership contract is at the center of all the disputes from whence these appeals flow, with the main issue being whether Sherrill effectively resigned as a general, managing partner of RPC through a series of agreements made in 1975 and 1976. Briefly, Sherrill maintains that his attempted resignation was ineffective and a nullity because he could not secure the consent of the 15 limited partners and the City of New York Housing Preservation and Development Department (HPD).[2] Gray insists that Sherrill "retired" from RPC, and thus, did not need the consent of anyone.[3] Yavner, though he originally gave his consent to Sherrill's withdrawal from RPC, agrees with Sherrill that it was an ineffective resignation for the lack of necessary consents. ¶ In 1978 Sherrill commenced an action on this basis against Gray and Grayco Builders, Inc. for rescission of one of the 1976 agreements, and return of certain moneys he allegedly paid out in furtherance thereof. These defendants answered with general denial, and then pursued discovery. In May of 1981, Gray and Grayco filed a separate suit against Sherrill, Yavner and Robert Sherrill Associates (RSA) seeking an accounting, an injunction against Sherrill attempting to act as managing partner for RPC and a money judgment. Then in November of 1981, Gray and Grayco moved to join Yavner as a defendant in Sherrill's action, and later that month Gray demanded arbitration of Sherrill and Yavner, again seeking an accounting and a declaration that Sherrill had "retired" under paragraph 12 of the RPC agreement. (Grayco served a similar demand for arbitration relative to one of the 1976 project agreements.) ¶ In December, 1981 Grayco's motion to join Yavner in Sherrill's action was granted and Gray consented to dismissal of its lawsuit for failure to serve a complaint. Then, in January of 1982, Gray and Grayco served an amended answer to Sherrill's complaint, now asserting counterclaims against Sherrill and cross claims against Yavner. ¶ Finally, in October, 1982, after entry of the first order appealed from (denying Sherrill's application to join the limited partners of RPC), Sherrill instituted his second action, this time naming all signatories to the 1972 agreement (both limited and general partners), as well as HPD. In this mirror action to his first, Sherrill seeks a declaratory judgment that he is managing, general partner of RPC, and his attempted resignation was a nullity.[4] ¶ By instituting the second action Sherrill has effectively

1. Plus 15 limited partners.

2. The City of New York Housing and Preservation Development Department is the successor agency to the Housing and Development Administration, and retains the former's interest of a mortgagee, pursuant to article II of the Private Housing Finance Law. Paragraph 13 (d) of the partnership contract states that the agreement "can only be changed, altered, modified or amended by a writing executed by all the Partners and with the consent of the HDA, so long as the Project is encumbered by a mortgage held by City of New York or New York City Housing Development Corporation."

3. Paragraph 12 (a) of the agreement states in pertinent part: "The death, retirement, bankruptcy or insolvency of a General Partner, shall not be an event of dissolution of the Partnership, so long as there is one qualified surviving General Partner."

4. It should also be noted that Yavner instituted two actions in 1980 relative to two of the 1976 projects seeking an inspection of the books and other relief. These actions, too, appear to have arisen from the main dispute over Sherrill's attempt at withdrawing from RPC.

abandoned his previous one, thereby mooting the appeal from the October 1, 1982 order; accordingly, we dismiss that appeal. ¶ All of these disputes belong in one consolidated action where a unity of discovery and procedure can effect an efficient resolution of the confusion over Sherrill's status in RPC and all of the issues which have been born of that confusion. Arbitration should not and may not be resorted to; the parties have all chosen the courtroom, either directly or through actions which constitute waiver. All parties should, however, be given an opportunity to themselves consolidate their respective pleadings into comprehensive and conclusive statements of the alleged wrongs. We note that consolidation into one lawsuit is consonant with the fact that a majority of the limited parties have secured counsel and, through counsel, participated in the broader Sherrill action. ¶ The appeal in connection with that case focuses on the correctness of Justice Schwartz' decision not to honor Gray's demand for arbitration. In a decision dated March 31, 1983 Justice Schwartz reasoned that the opposition of HPD to arbitration was sufficient, inasmuch as HPD "is a defendant in the action with a substantial interest as mortgagee in the outcome of the litigation", but as a nonsignatory to the RPC agreement, HPD could not be compelled to arbitrate. ¶ We agree with this and add it to our own reasons for modifying the order entered July 1, 1983, and grant the Sherrill/Yavner motions to stay arbitration permanently. Defendants Gray and Grayco make much of the language in CPLR 7503 (subd [c]) to the effect that failure to make a motion to stay arbitration within 20 days of demand precludes a party "from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time." It is true that the 20-day period is construed as a strict Statute of Limitations, so that, among other reasons, arbitrators may know in a timely way whether or not they should proceed. (Cf. *Matter of Woodcrest Fabrics [Taritex Inc.]*, 98 AD2d 52.) This can be no comfort, however, when the right to arbitration has been unequivocally waived. Both before and after they made their demands for arbitration, defendants continuously acted in a manner consistent with litigation, not arbitration. Compare *Rusch Factors v Fairview Mfg. Co.* (34 AD2d 635), in which a stay of arbitration was vacated because defendant, after repeatedly extending by stipulation its time to answer without reservation of the right to arbitration, served an answer containing four affirmative defenses (none of which mentioned the arbitration clause) plus a counterclaim. Two weeks thereafter, or about four months after the action had been commenced, defendant sought an order compelling arbitration. We held (p 636) that "where, as here, respondent affirmatively seeks relief and counterclaims in the action, it effectively waived the agreement to arbitrate as does a plaintiff who commences an action ignoring the agreement to arbitrate (*Matter of Zimmerman* v. *Cohen*, [236 NY 15], p. 19)." ¶ Here, defendants never mentioned the arbitration clause at any time prior to their demands, made almost three years after plaintiff instituted his action. Then, seven weeks later they served an amended answer, conformed entirely to the arbitration demands, and asserted over a dozen counterclaims and cross claims. Moreover, all during this seven-week period they aggressively pursued discovery, with a specific motion for a discovery schedule made one full month after the arbitration demands were made. Lastly, we note that Gray and Grayco had already commenced their own lawsuit a year and a half earlier. Although later dismissed, for failure to serve a complaint, the summons recitation of the nature of that lawsuit lends support to an argument that, like any other plaintiff, Gray and Grayco abandoned their right to arbitrate at this juncture. (Cf. *Matter of Zimmerman v Cohen*, 236 NY 15, 21 [arbitration statute "not intended to help or assist a party who had intentionally waived

and abandoned the arbitration agreement and had chosen another remedy provided by law."].) ¶ As was said in *De Sapio v Kohlmeyer* (35 NY2d 402, 406), "[t]he courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration." (And see *Denihan v Denihan*, 34 NY2d 307, 311: "we cannot but remark that by flitting between forums the parties have abused both the arbitration process and the courts.") ¶ Defendants' acts have unequivocally shown a preference for the courtroom and they have thus waived their right to arbitration. We need not delineate which acts alone would or would not be sufficient to constitute waiver — it is enough that the totality presented here is so conclusively waiver that it "may not be unilaterally recalled." (*Rusch Factors v Fairview Mfg. Co., supra.*) ¶ Lastly, we reiterate our belief that the courtroom is ultimately the most competent forum, for the simple reason that all of the parties with an interest in the resolution of the various issues can here be heard, with full opportunity to conduct discovery and produce witnesses. Concur — Kupferman, J. P., Carro, Bloom and Lynch, JJ.

Sandler, J., concurs in the result only.