SUSAN LYALL, as Executrix of RICHARD SHERRILL, Deceased, Respondent-Appellant, v GRAYCO BUILDERS, INC., et al., Respondents-Appellants, and VIOLA YAVNER et al., as Coexecutors of LOUIS E. YAVNER, Deceased, Appellants-Respondents, et al., Defendant. RICHARD SHERRILL ASSOCIATES, Third-Party Defendant-Respondent-Appellant; SUSAN J. GRAY et al., Third-Party Defendants-Respondents-Appellants, et al., Third-Party Defendant.

SUSAN LYALL, as Executrix of RICHARD SHERRILL, Deceased, Plaintiff, v RIVERSIDE PARK COMMUNITY (STAGE I), INC., et al., Defendants.

First Department, May 5, 1992

8

### APPEARANCES OF COUNSEL

*Morrell I. Berkowitz* of counsel *(Rudes, Lax, Berkowitz & Mittman, P. C.,* attorneys), for Richard Sherrill Associates, respondent-appellant.

*Sol V. Slotnik* of counsel *(Stults Balber Horton & Slotnik,* attorneys), for Grayco Builders, Inc., and another, respondents-appellants.

*Stewart E. Wurtzel* of counsel *(David L. Berkey* with him on the brief; *Gallet Dreyer & Berkey,* attorneys), for Viola Yavner and another, appellants-respondents.

### OPINION OF THE COURT

Asch, J.

This action has been pending for 13 years. We will attempt to summarize only that part of the prior history of the parties' relationship and procedural history of this action which is relevant to what is before us.

Sherrill, Yavner and Gray worked together in real estate development for two decades, individually and through various entities, setting up housing developments in New York City. The controversies arise from two separate involvements. First, the three were general partners in Riverside Park Community (Stage I), Inc., formed in 1972. In December 1976, Sherrill attempted to withdraw from this entity. However, after failing to obtain the necessary consents to such withdrawal from various limited partners and the New York City Department of Housing Preservation and Development, Sherrill brought this action in 1978 against Daniel Gray, Grayco Builders, Inc., and Yavner for rescission of December 29, 1976 agreements and for return of $50,000 he had allegedly paid out for various expenses in performance. Secondly, by an

agreement of January 1975, Sherrill and Grayco Builders, Inc. (only these two) joined forces to attempt to develop 229-235 West 60th Street. In that agreement, Sherrill assigned his contract rights to purchase the property to Grayco Builders, Inc. and Grayco was to apply for rental subsidies. Paragraph 24 of that agreement provided that each party "is and will remain actively engaged in other business ventures during the term of this Agreement and * * * shall be free to separately pursue other business opportunities and ventures for its own account". Required approvals from the City Planning Commission, HPD and the local Planning Board were never obtained for the 60th Street site. In September 1978, the Federal Housing and Urban Development Department (HUD) canceled the "set-asides" (section 8 commitment of government funds) for the 60th Street project.

In response to Sherrill's 1978 complaint for rescission of his withdrawal from the Riverside Park Community entity and for $50,000 damages, the Gray defendants originally answered with a general denial. Yavner agreed with plaintiff Sherrill that the asserted resignation was ineffective. By 1978, Yavner and Sherrill had already joined forces and were engaged together in other development projects. Discovery commenced and along with inspection of 100,000 pages of documents, Sherrill was deposed by the Gray defendants in 1980. He testified that a section 8 commitment of government funds for the 60th Street project was transferred to a project on 106th Street, being developed by Richard Sherrill Associates. This entity apparently included Yavner but did not include any Gray participation.

Due, at least in part to this revelation, in January 1982, defendants Gray individually and Grayco Builders, Inc. served an amended answer vastly expanding the scope of this action. It asserted 13 counterclaims against Sherrill and the newly added party Richard Sherrill Associates, as well as 15 cross claims against Yavner. These included the 16 claims relevant to these cross appeals. They generally fall into three categories. Gray individually asserted counterclaims four to six on the alternative theory that if Sherrill had not effectively withdrawn as Riverside Park Community entity partner in 1976, Sherrill had to return $170,000 Gray had paid him in connection with such withdrawal. Grayco Builders, Inc.'s first through fifth counterclaims against Sherrill and Richard Sherrill Associates sought a share of section 8 set-asides allegedly improperly diverted from the 60th Street project to the 106th

Street project seeking relief of declaratory judgment, constructive trust, injunction and accounting. The same section 8 set-aside factual basis underlay the seven cross claims asserted by Grayco Builders, Inc. against Yavner seeking relief of declaratory judgment, damages for breach of fiduciary duty and tortious interference with its contract with Sherrill, constructive trust, injunction and an accounting. For reasons best known to him, Gray individually also asserted a cross claim against Yavner seeking damages for tortious interference with contract.

Litigation was delayed in 1983-1985 due to the Gray parties' ultimately unsuccessful attempt to have these claims arbitrated. *(See,* 99 AD2d 965, *affd* 64 NY2d 261.) The other claims of Gray individually and Grayco Builders, Inc. not discussed above, concerning their contention that Sherrill had effectively withdrawn as partner of the Riverside Park Community entity were rejected by Justice Miller's grant of partial summary judgment to Sherrill, Richard Sherrill Associates and Yavner by an order entered October 15, 1987. Justice Miller reserved for further motion practice a determination of the effect of this finding upon individual counterclaims and cross claims. Justice Cahn, in an order entered March 21, 1990, dismissed all the Gray parties' multiple claims dependent on the contention that Sherrill had effectively withdrawn from the Riverside Park Community entity pursuant to the December 1976 agreements. No appeal was taken from those órders.

In September 1988, the Gray parties then moved to further amend their answer, so as to allow Grayco Development and Construction Corp. to assert a $290,000 claim against Sherrill, allegedly for moneys it had paid Sherrill to withdraw as partner from the Riverside Park Community entity, which should be returned now that it had been found that Sherrill had not effectively withdrawn from the entity; to allow Gray to assert a $25,000 claim against Sherrill upon an alleged promissory note arising from that same 1976 transaction and to allow expansion of its claims of allegedly improper diversion of section 8 set-asides from the 60th Street project to include not only the 106th Street project but also another Sherrill-Yavner project, Andrews Plaza project in the Bronx. Daniel Gray argued that Sherrill had notice of the first two types of claims from the 1982 answer with counterclaims, as Gray had therein sought $170,000 on essentially the same theory. Gray thereby implicitly admitted that the original

counterclaims four through six had been brought in the name of the wrong party.

Defendant Yavner cross-moved to dismiss those three counterclaims of Gray (numbers four to six, which were against Sherrill only) on grounds of lack of capacity to sue; and for summary judgment dismissal as to all claims arising from the alleged improper transfer of government set-asides. It was argued that the newly proposed claims were time barred and their assertion had been unduly delayed, as Gray had known since at least 1982, if not 1976, of the facts underlying the proposed changes, in particular the identity of the real party in interest, due to his intimate involvement in the underlying events. It was further argued that Justice Miller's decision did not excuse the delay in seeking the amendment inasmuch as the Gray parties had, in 1982, pleaded in the alternative, based upon the possibility that Sherrill's withdrawal from the entity had been ineffective. It was also argued that any amendment at this late date would prejudice the Sherrill estate, as the executrix had no personal knowledge of the events of the 1970's. As to the proposed $25,000 claim by Gray against Sherrill based upon a promissory note, Yavner asserted that he knew that that note had been marked paid in 1976. In support of the request for dismissal of the Gray parties' claims based upon diversion of government set-asides from the 60th Street project to the 106th Street project, it was argued that such was an impossibility, as the set-asides for the 60th Street project had been canceled by the Department of Housing and Urban Development's letter of September 19, 1978. Further, it was asserted that Sherrill's success in obtaining set-asides for another of his projects, the 106th Street project, represented independent funding, specifically permitted by paragraph 24 of the 1975 agreement between Sherrill and Grayco Builders, Inc.

The affidavits of HUD's regional director Alexander Nacleri and former New York State Commissioner of Housing and Community Renewal Victor Marrero were also submitted, asserting that the funding for the 106th Street project (as well as the Bronx, Andrews Plaza project) were independent of any prior contemplated funding of the 60th Street project. This was based on the argument that the consummated projects had different "source years" from the contemplated funding of the 60th Street project and that the Andrews Plaza project in the Bronx was ultimately funded not through a "set-aside" but through a different process, Notification of Funding Avail-

ability (NOFA). Yavner also claimed Gray had waived any breach of fiduciary duty by Yavner by Gray's writings to him in October 1977 and September 1978, as follows, "I think your decision to represent Sherrill in pursuit of his obligations under Grayco Builders, Inc.-Sherrill is a wonderful idea since you seem to enjoy some of the playacting that I find most distressing * * * I hope you will find the gamesmanship fun and even economically rewarding" and "If you want, you can make your own terms with Sherrill with respect to your interest as apparently you had already decided to live with him". Plaintiff, Sherrill's estate, and Richard Sherrill Associates also opposed the Gray parties' proposed amendment of the answer and cross-moved for summary judgment dismissal of all claims concerning the alleged improper transfer or diversion of government set-asides. In fact, Sherrill had moved for such relief during his lifetime, in 1983 and 1985, submitting affidavits at those times which recanted his 1980 deposition testimony. Those motions had been withdrawn in the first instance due to the Gray parties' pursuit of arbitration, ultimately rejected by the Court of Appeals, and in the second instance, due to submission of another summary judgment motion to Justice Miller in which Sherrill ultimately prevailed.

In reply, Gray relied upon Sherrill's 1980 deposition testimony and upon statements in Yavner's correspondence, apparently obtained in discovery, indicating that both Yavner and Commissioner Marrero had considered and attempted to transfer the set-asides for the 60th Street project, first to a site on 67th Street, and subsequently to the 106th Street-Manhattan West project.

By decision dated February 20, 1990, the IAS court denied the Gray parties' motions for leave to further amend the answer; granted the motions of the Yavner and Sherrill parties to dismiss Gray's individual fourth-sixth counterclaims, but denied the balance of those motions, in particular as to claims alleging improper transfer of government set-asides. While the court recognized motions for leave to amend were ordinarily freely granted, it found there had been no demonstration of merit to the proposed amendment; the proposed amendment sought to interpose new claims which had accrued in 1976-1977, which did not relate back to the original answer and thus were barred by the Statute of Limitations; there was no valid excuse for the inordinate delay in seeking such leave; and that, as Sherrill was now deceased, his estate

would be significantly prejudiced by such a change in the theories of the counterclaims. Gray's fourth through sixth counterclaims for $170,000 damages in connection with payments to Sherrill for withdrawing as Riverside Park Community entity partner were dismissed, as it was found Gray individually was not the real party in interest, but rather those claims belonged to Grayco Development and Construction Corp. and had not been assigned to Gray individually. The court also saw those claims as being based upon the 1976 agreements, which Justice Miller had declared void. The court proceeded to find factual issues as to the alleged diversion of set-asides from the 60th Street project to other projects, so that no other claims were dismissed.

■ Yavner then moved, *inter alia,* to reargue and renew and was joined by the Sherrill parties. The IAS court granted reargument, but adhered to the initial determination. Reargument was granted in recognition of the failure of the court to address movants' prior claims of the Statute of Limitations bar against the 1982 amended answer's tort causes of action and of the theory of waiver of breach of fiduciary duty claims by Gray. However, the court found that the set-asides allegedly improperly transferred to the 106th Street project had not been made available until 1980 so that the causes of action accrued in 1980, making their assertion in the January 1982 amended answer timely. The court also saw no waiver of breach of fiduciary duty claims in Gray's writings to Yavner, rather they gave "Yavner some latitude to negotiate with Sherrill, but do not unequivocally grant Yavner an unrestricted right to enter into agreements with Sherrill and RSA which excluded Daniel Gray or Grayco from participation. Thus, movants have not conclusively established a 'waiver' of the alleged breach of fiduciary duty". The primary focus of the Yavner parties' appeal and the Sherrill parties' "cross-appeal" is to obtain summary judgment dismissal of all the Gray parties' claims concerning alleged improper transfer or diversion of section 8 set-asides from the 60th Street project to the 106th Street project. While the Yavner and Sherrill parties have submitted the affidavits of administrative officials, asserting that the set-asides were not transferred, the Gray parties have presented evidence that such transfer was certainly attempted and that the realities of the process may be quite different than the formalities and that such attempt may have been implemented. Indeed, Sherrill himself testified in 1980 (when this issue had not yet been raised) that the set-asides

had been transferred. The Yavner-Sherrill parties do not conclusively refute this admission but solely state the testimony was mistaken and has been recanted. Perhaps even more significantly, the contemporaneous correspondence with and by the administrative officials also lends some support to the Gray parties' contention of transfer of the set-asides. The Yavner and Sherrill parties actually admit that there was an attempt to transfer these set-asides but argue now that it could not be accomplished as a matter of law. The true issue, therefore, seems to be whether the set-asides are property which could be considered an opportunity of the 60th Street project Grayco Builders-Sherrill partnership, capable of being diverted. If so, Sherrill, as Grayco Builders' partner, and Yavner, as Grayco Builders' attorney, could well owe Grayco Builders a fiduciary duty to at least offer Grayco the chance to share in that opportunity (see, Meinhard v Salmon, 249 NY 458).

Paragraph 24 of the 1975 partnership agreement, giving Sherrill the right to work on other projects independently, did not give him and Yavner the right to deprive Grayco of a partnership interest. While the issues of whether the set-asides can be considered such type of opportunity may ultimately be a legal one, capable of resolution without a trial, the answer also depends on the underlying facts, including bureaucratic practices, which have essentially been disputed. Therefore, the IAS court may decide to permit the administrators-experts to testify and be subjected to cross-examination, before ruling upon this issue.

The Yavner and Sherrill parties also argue the Gray parties' set-aside claims are barred by the three-year Statute of Limitations of CPLR 214, on the basis that the claims accrued in 1978 and were not asserted until the 1982 amended answer. In turn, their claim of 1978 accrual is based upon Sherrill's 1978 rejection of Gray's demand to participate in any project other than the 60th Street project and the Riverside Park Community project and the Department of Housing and Urban Development's September 14, 1978 cancellation of set-asides for the 60th Street project preceding Sherrill's and Yavner's November 1978 application for set-asides for the 106th Street-Manhattan West project. However, as the set-asides for the 106th Street project were not finally approved until 1980, it is difficult to see how the Gray parties' claims accrued earlier than 1980, prior to any completed "diversion." The Statute of Limitations contention of the Yavner/Sherrill

parties amounts to a claim that nothing of significance occurred in 1980, because the set-asides were not transferred at all. However, this is just a restatement of their argument that the claims are insufficient because the set-asides were not improperly transferred or diverted from the joint Grayco Builders-Sherrill 60th Street property.

The Yavner/Sherrill parties also argue that the Gray parties are judicially estopped from maintaining a 1980 accrual date, because the Gray parties previously admitted accrual thereof as of 1978. There was, however, no such prior admission. Gray merely pointed to 1978 correspondence as demonstrating that the administrative officials were participating in a plan to transfer the set-asides (not then completed). In any event, there is no showing of reliance by the Yavner/Sherrill parties on any such admission and the issue of accrual remains one for the court to resolve on the merits.

The argument that Gray waived Yavner's breach of fiduciary duty is without merit. The informal 1978 writings of Gray merely stated he saw no problems with Yavner joining with Sherrill on other projects, but certainly did not countenance Yavner participating in *diverting* opportunities belonging to the Gray parties' projects.

■ The Yavner/Sherrill parties also attack the sufficiency of the pleadings of certain individual claims. Even on reargument, the IAS court never addressed those contentions. The Gray parties maintain that this was because the evidentiary affidavits submitted on the summary judgment motions supplemented the allegations of the amended answer, *(Rovello v Orofino Realty Co.,* 40 NY2d 633) so that the allegations of the pleadings themselves are no longer material. In any event, in light of Gray's detailed affidavits, there is no merit to the claim that Grayco Builders, Inc.'s fifth and sixth cross claims and Gray's fourth and sixth cross claims failed to sufficiently state the alleged wrong in detail so that the allegation of participation in the diversion of set-asides was insufficient as a mere legal conclusion. Nor is there merit to the claims that Yavner could not tortiously induce Sherrill to breach the 1975 agreement between Sherrill and Grayco Builders because Sherrill had decided to do so on his own in April 1978, or that Gray's fourth cross claim and Grayco Builders' second cross claim against Yavner is for conspiracy only (it is for tortious interference). The argument that the claims for an accounting are either vague or unnecessary due to discovery in this action or the adequacy of an action at law is without merit,

given that such relief is standard for a claim of diversion of an opportunity of a venture. Likewise, a constructive trust appears to be a proper and appropriate remedy for alleged breach of fiduciary duty, contrary to the claim of the Yavner parties that it cannot be imposed in the absence of a promise by Yavner to the Gray parties with respect to the set-asides.

However, there is merit to the Sherrill/Yavner argument that Grayco Builders' fourth counterclaim against Sherrill and ninth cross claim against Yavner for injunctive relief is insufficient as no irreparable injury was alleged. In addition, at this late date, no injunctive relief can be effective. Accordingly, those claims should be dismissed. On the other hand, a similar argument, that the declaratory judgment claims by Grayco in its third cross claim against Yavner (not also in its fourth, fifth and sixth cross claims as Yavner urges), is unnecessary in light of the sufficiency of monetary damages, is without merit because a declaration as to a participation interest may ultimately be useful in further proceedings herein.

■ On the Gray parties' cross appeal, their brief limits the argument to one that the court should have granted leave to amend their answer. The liberal policy of CPLR 3025 (b) is cited. They properly point out that the 1982 amended answer did give Sherrill notice, while he was alive and competent, of the alternative claim, that if Sherrill's 1976 withdrawal as Riverside Park Community general partner was ineffective, that he should not be allowed to keep $170,000 given to him for that withdrawal. Thus, similar claims can even now relate back to the 1982 amended answer (CPLR 203 [e]). Nor should it be a problem to correct the mistake of the 1982 amended answer in identifying the proper claimant for that $170,000, Grayco Development and Construction Corp., not Gray individually. This court has regularly allowed correction of the identity of the claimant after the Statute of Limitations has run, where the original, mistaken pleading gave the opposing party sufficient notice of the transaction (see, Bellini v Gersalle Realty Corp., 120 AD2d 345; Manti v New York City Tr. Auth., 146 AD2d 551; American Home Assur. Co. v Scanlon, 164 AD2d 751). The Gray parties, however, overreach when they contend that these alternative claims accrued only in 1987, when Justice Miller found Sherrill's attempted withdrawal as partner in the Riverside Park Community entity in 1976 was ineffective, and that they can therefore assert new and/or different claims on different theories including one

upon a promissory note and the other for the greater amount of $290,000, as opposed to $170,000 originally sought. In fact, as their own 1982 amended answer demonstrates, they were well aware that they could plead alternatively prior to any judicial resolution of the question of whether Sherrill's withdrawal was effective. Further, since Sherrill has now died, any assertion by the Gray parties of a new claim on the promissory note or for an amount greater than $170,000 would be prejudicial to the estate. Nor may the Gray parties expand their claim of improperly transferred set-asides to include another, different project (the Andrews Plaza project in the Bronx).

While the Sherrill/Yavner parties raise the delay of Gray in seeking to change the identity of the claimant from himself to his corporation, that delay has resulted in little prejudice in this long-delayed action, where decedent Sherrill and Yavner have previously been deposed and where to deny leave to amend completely would allow Sherrill's estate to keep $170,000 received upon Sherrill's withdrawal, now after a judicial determination that his withdrawal was ineffective.

Accordingly, the order of the Supreme Court, New York County (David B. Saxe, J.), dated August 30, 1990 and entered April 25, 1991, which, *inter alia,* denied the motion of defendants Yavner and Berkey as executors of the estate of Louis E. Yavner, to dismiss defendant Grayco Builders, Inc.'s first through fifth counterclaims against plaintiff Susan Lyall as executrix of the estate of Richard Sherrill and the order of the same court and Justice, entered September 5, 1990, which granted reargument, and upon reargument adhered to the initial determination, should be modified, on the law and facts, to the extent of granting the motion for leave to further amend the answer only to the extent of permitting Grayco Development and Construction Corp. to assert a claim of $170,000 against the Sherrill estate, and of dismissing Grayco Builders, Inc.'s fourth counterclaim against Sherrill's estate and ninth cross claim against Yavner's estate for injunctive relief, and otherwise affirmed, without costs or disbursements.

SULLIVAN, J. P., MILONAS, KUPFERMAN and SMITH, JJ., concur.

Order of the Supreme Court, New York County, dated August 30, 1990 and entered April 25, 1991, which, *inter alia,* denied the motion of defendants Yavner and Berkey as executors of the estate of Louis E. Yavner, to dismiss defendant

Grayco Builders, Inc.'s first through fifth counterclaims against plaintiff Susan Lyall as executrix of the estate of Richard Sherrill and the order of the same court and Justice, entered September 5, 1990, which granted reargument, and upon reargument adhered to the initial determination, is modified, on the law and facts, to the extent of granting the motion for leave to further amend the answer only to the extent of permitting Grayco Development and Construction Corp. to assert a claim of $170,000 against the Sherrill estate, and of dismissing Grayco Builders, Inc.'s fourth counterclaim against Sherrill's estate and ninth cross claim against Yavner's estate for injunctive relief, and otherwise affirmed, without costs or disbursements.