NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3506-14T1

BRIAN SULLIVAN,

     Plaintiff-Appellant,

v.

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY; MICHAEL FEDORKO,
(acting in his individual and
official capacities); MARY LEE
HANNEL, (acting in her individual
and official capacities); RICHARD
WILLIAMS, (acting in his individual
and official capacities); ROBERT E.
VAN ETTEN, (acting in his individual
and official capacities); and MICHAEL
NESTOR, (acting in his individual
and official capacities),

     Defendants-Respondents.

| APPROVED FOR PUBLICATION |
| :---: |
| March 15, 2017 |
| APPELLATE DIVISION |

_____

Argued October 13, 2016 – Decided March 15, 2017

Before Judges Simonelli, Carroll and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2340-13.

Donald F. Burke argued the cause for appellant (Law Office of Donald F. Burke, attorneys; Mr. Burke and Donald F. Burke, Jr., on the briefs).

Cheryl N. Alterman argued the cause for respondents (Margaret Taylor-Finucane, attorney; Ms. Alterman, on the briefs).

The opinion of the court was delivered by

SIMONELLI, J.A.D.

Plaintiff Brian Sullivan, a former at-will employee of defendant Port Authority of New York and New Jersey (Port Authority), filed a complaint against the Port Authority and individual defendants, alleging retaliation and civil conspiracy in violation of the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. The trial court granted summary judgment to defendants and dismissed the complaint with prejudice, finding the Port Authority is not subject to suit under CEPA. We agree, and affirm.

Defendants supported their summary judgment motion with a statement of material facts and two certifications with attached documents. Plaintiff did not file a responding statement either admitting or disputing each fact in defendants' statement, nor did he file a responding statement of additional facts, as required by Rule 4:46-2(b). Plaintiff also did not file an affidavit or certification setting forth specific facts showing there was a genuine issue for trial, as required by Rule 4:46-5(a), nor did he provide any deposition transcripts or certified answers to interrogatories. Rather, he improperly relied on the

unverified allegations in his complaint, as he does in his merits brief on appeal. See R. 4:46-5(a) (prohibiting an adverse party from relying on the mere allegations of his pleading to oppose summary judgment). Plaintiff's reliance on the bare conclusions in the complaint without support in affidavits was insufficient to defeat defendants' summary judgment motion. U.S. Pipe & Foundry Co. v. Am. Arbitration Ass'n, 67 N.J. Super. 384, 399-400 (App. Div. 1961).

We derive the following facts from the evidence defendants submitted in support of their motion. From February 9, 1987, to June 6, 2012, plaintiff was employed as a police officer in the Port Authority's Public Safety Department. He attained the rank of police inspector. As an inspector, he held the position of Subject Matter Expert and participated in the development and administration of the evaluation and exam process for police officers seeking promotion to the rank of sergeant. In June 2011, he acknowledged receipt of and signed a document entitled "Subject Matter Expert, Test Security Instructions," which required him to immediately notify the Assessment Specialist and the Supervisor of Assessment Services if he became aware of or suspected any type of improper conduct or other improprieties associated with the evaluation process or any of its components.

Plaintiff became aware of improper conduct and/or other improprieties associated with the exam process for the sergeant position, which compromised the integrity of the exam. He failed to notify anyone of this improper conduct, and provided no competent evidence to the contrary. Following an investigation by the Office of Inspector General, the Port Authority's Human Resources Department recommended that plaintiff be permitted to retire prior to the filing of disciplinary charges for failing to report the improprieties.

On June 6, 2012, plaintiff tendered his resignation and retired from the Port Authority. In August 2012, he served a notice of claim on the Port Authority, alleging violations of the New York Whistleblower Law (NYWL), N.Y. Lab. Law § 740, and the New York Civil Service Law. N.Y. Civ. Serv. Law § 75(b).

On May 15, 2013, plaintiff filed a complaint against defendants in the Superior Court of New Jersey, alleging retaliation and civil conspiracy in violation of CEPA. Plaintiff sought injunctive relief in the form of reinstatement and damages. Following the completion of discovery, defendants filed a motion for summary judgment. Defendants argued that the Port Authority is not subject to CEPA because it is a bi-state agency created pursuant to an interstate compact and did not expressly or impliedly consent to suit pursuant to this single-

state legislation, and the NYWL is not complementary or parallel to CEPA.

In response to defendants' summary judgment motion, plaintiff withdrew his claim for reinstatement. On appeal, plaintiff improperly attempts to resurrect this issue in a footnote in his merits brief. See Almog v. Israel Travel Advisory Serv., Inc., 298 N.J. Super. 145, 155 (App. Div.) (holding that legal issues raised in footnotes but not made under appropriate point headings as required by Rule 2:6-2(a)(5) will not be considered on appeal), certif. granted, 151 N.J. 463 (1997), appeal dismissed, 152 N.J. 361 (1998). In addition, concessions made during a summary judgment motion foreclose a contrary argument on appeal. Ji v. Palmer, 333 N.J. Super. 451, 459 (App. Div. 2000).

The motion judge found that the Port Authority was created in 1921 by a bi-state compact between New York and New Jersey and the compact did not expressly provide for unilateral state action under CEPA. The judge also found that CEPA and the NYWL were not substantially similar so as to impliedly alter the compact. The judge granted summary judgment and dismissed the complaint with prejudice. In granting summary judgment to the individual defendants, the judge found that they did not take any independent action against plaintiff. Plaintiff improperly

challenges this ruling in a footnote. Almoq, supra, 298 N.J. Super. at 155.

On appeal, plaintiff contends that the judge erred in granting summary judgment because, pursuant to the broad provisions of N.J.S.A. 32:1-157 and N.Y. Unconsol. Laws § 7101, New York and New Jersey expressly consented to suit under CEPA as long as venue is properly laid, a notice of claim is filed sixty days before suit is filed, and suit is filed within one year of the accrual of the cause of action. Plaintiff argues that because of these broad consent-to-suit statutes, the parallel and complementary implied consent analysis is inapplicable.

We decline to address plaintiff's additional argument that the Port Authority is routinely subjected to suits based on single-state laws. Plaintiff did not raise this issue before the motion judge and it is not jurisdictional in nature nor does it substantially implicate the public interest. Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (citation omitted). We also decline to consider documents included in plaintiff's appendix as exhibits Pa99 to Pa113. Plaintiff did not present these documents to the motion judge. See N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278 (2007). In addition, the Port Authority's Whistleblower Protection Policy, included in

plaintiff's appendix as Pa110 to Pa113 does not apply here, as it was adopted after his resignation. See Port Authority Whistleblower Protection Policy (Mar. 19, 2015), available at http://corpinfo.panynj.gov/documents/port-authority-whistleblower-protection-policy/.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (citation omitted). That standard compels the grant of summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Id. at 179 (quoting R. 4:46-2(c)). "To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div.), certif. denied, 211 N.J. 608 (2012)), certif. denied, 220 N.J. 269 (2015). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion."

<u>Puder v. Buechel</u>, 183 <u>N.J.</u> 428, 440-41 (2005) (citations omitted).

If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." <u>DepoLink Court Reporting & Litig. Support Servs. v. Rochman</u>, 430 <u>N.J. Super.</u> 325, 333 (App. Div. 2013) (citation omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. <u>Nicholas v. Mynster</u>, 213 <u>N.J.</u> 463, 478 (2013). "[F]or mixed questions of law and fact, [we] give deference . . . to the supported factual findings of the trial court, but review de novo the lower court's application of any legal rules to such factual findings." <u>State v. Pierre</u>, 223 <u>N.J.</u> 560, 577 (2015) (citations omitted). Applying the above standards, we discern no reason to reverse.

The Port Authority was created in 1921 by a bi-state compact entered into between the states of New York and New Jersey and approved by Congress. <u>Santiago v. N.Y. & N.J. Port Auth.</u>, 429 <u>N.J. Super.</u> 150, 156 (App. Div. 2012) (quoting <u>Brown v. Port Auth. Police Superior Officers Ass'n</u>, 283 <u>N.J. Super.</u> 122, 130 (App. Div. 1995)), <u>certif. denied</u>, 214 <u>N.J.</u> 175 (2013). The 1921 compact gave the Port Authority "such additional powers and duties as may hereafter be delegated to or imposed upon it from time to time by the action of the legislature of either

state concurred in by the legislature of the other." N.J.S.A. 32:1-8; N.Y. Unconsol. Laws § 6408.

"Prior to 1951, the Port Authority was immune from suit." Santiago, supra, 429 N.J. Super. at 158 (quoting Wood v. DIC/Underhill & Universal Builders Supply Co., 136 N.J. Super. 249, 252 (Law. Div. 1975), aff'd o.b., 144 N.J. Super. 364, 365 (App. Div. 1976), certif. denied, 73 N.J. 65 (1977)). In 1951, the Port Authority's sovereign immunity was waived and the compact was amended to provide that "the States of New York and New Jersey consent to suits, actions, or proceedings of any form or nature at law, in equity or otherwise[.]" N.J.S.A. 32:1-157; N.Y. Unconsol. Laws § 7101. New York and New Jersey also enacted a more specific consent to suit provision for tortious acts by the Port Authority or its agents. N.J.S.A. 32:1-162; N.Y. Unconsol. Laws § 7106. However, the compact expressly prohibits unilateral action by one state without the concurrence of the legislature of the other state. N.J.S.A. 32:1-8; N.Y. Unconsol. Laws § 6408.

The scope of consent is expressly conditioned upon compliance with the notice provisions of N.J.S.A. 32:1-163; N.Y. Unconsol. Laws § 7107. Santiago, supra, 429 N.J. Super. at 160. Failure to comply with the notice requirements "withdraws the consent to suit, and thus, deprives the court of subject matter

jurisdiction." Ibid. (quoting Port Auth. of N.Y. and N.J. v. Airport Auto. Servs., Inc., 396 N.J. Super. 427, 430 (App. Div. 2007)). Defendants do not assert that plaintiff failed to comply with the notice requirements.

"The Port Authority is not the agency of a single state but rather a public corporate instrumentality of New Jersey and New York." Bunk v. Port Auth. of N.Y. & N.J., 144 N.J. 176, 184 (1995). Neither state may unilaterally impose additional duties, powers, or responsibilities on the Port Authority. Ibid. (citations omitted). The laws of one state cannot be applied to the Port Authority without the other state's consent. hip (Heightened Independence & Progress), Inc. v. Port Auth. of N.Y. & N.J., 693 F.3d 345, 358 (3d Cir. 2012); King v. Port Auth. of N.Y. & N.J., 909 F. Supp. 938, 945 (D.N.J. 1995), aff'd, 106 F.3d 385 (3d Cir. 1996); see also Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 42, 115 S. Ct. 394, 402, 130 L. Ed. 2d 245, 257 (1994) (holding that "bistate entities created by compact . . . are not subject to the unilateral control of any one of the States that compose the federal system"). "[T]he unilateral imposition of additional duties on the authority . . . is impermissible absent express authorization in the compact or joint legislation by the two creator states."

Ballinger v. Del. River Port. Auth., 172 N.J. 586, 594 (2002) (citations omitted).

"Nonetheless, [t]he corollary of the proposition that neither state may unilaterally impose its legislative will on the bi-state agency is that the agency may be subject to complementary or parallel state legislation[.]" Santiago, supra, 429 N.J. Super. at 157 (citations omitted). "Under the 'complementary or parallel legislation' principle, one compact state's [law] can be applied to the bi-state agency if it is 'substantially similar' to an enactment of the other state." Ibid. (quoting Ballinger, supra, 172 N.J. at 594). If the states do not have complementary legislation, the court must determine whether the bi-state agency impliedly consented to unilateral state regulation. Ballinger v. Del. River Port. Auth., 311 N.J. Super. 317, 324 (App. Div. 1998) (citation omitted), aff'd, 172 N.J. 586 (2002). The complementary or parallel legislation analysis does not apply to plaintiff's common law wrongful termination claims, as New York has no common law cause of action for wrongful termination. See Hassan v. Marriot Corp., 243 A.D.2d 406, 407 (N.Y. App. Div. 1st Dept. 1997). Thus, we focus on plaintiff's CEPA claim.

Neither the 1921 compact nor the 1951 amendments expressly provide for application of CEPA against the Port Authority. To

the contrary, the compact expressly prohibits unilateral action without the concurrence of the sister state. N.J.S.A. 32:1-8; N.Y. Unconsol. Laws § 6408. Nonetheless, we must determine whether CEPA is substantially similar to the NYWL so as to alter the compact to allow application of CEPA against the Port Authority.

"In order to be deemed substantially similar, the two laws at issue must 'evidence some showing of agreement.' In other words, the New Jersey and [New York] legislatures must 'have adopted a substantially similar policy' that is apparent in their respective statutes." Ballinger, supra, 172 N.J. at 600 (quoting Int'l Union of Operating Engr's, Local 68 v. Del. River & Bay Auth., 147 N.J. 433, 445, 447 (1997)). Factors to be considered in determining whether laws are substantially similar include: (1) the scope of the comparative laws; (2) the filing limitations period; (3) the types of remedies and damages available; and (4) the right to trial by jury. See Ibid.

While CEPA and the NYWL have a one-year statute of limitations, see N.J.S.A. 34:19-5; N.Y. Consol. Laws § 740(4)(a), they are significantly dissimilar in scope. Under CEPA, New Jersey employees are protected from retaliatory actions if they disclose or threaten to disclose any activity, policy, or practice that they reasonably believe violated a

rule, law, or regulation, and need not prove an actual violation of the law or clear mandate of public policy in order to rpevail. Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003). Under the NYWL, New York employees are only protected if they disclose or threaten to disclose any activity, policy, or practice that they reasonably believe violates a law, rule, or regulation which "creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud[.]" N.Y. Lab. Law § 740(2)(a); see also Bordell v. Gen. Elec. Co., 208 A.D.2d 219, 221 (N.Y. App. Div. 3d Dept. 1995), aff'd, 88 N.Y.2d 869 (N.Y. 1996). Notably, plaintiff does not argue or present a claim under the NYWL that his alleged disclosure of improper conduct or other improprieties associated with the evaluation and exam process for the sergeant position constituted a "substantial threat to public safety." In any event, unlike the NYWL, CEPA does not require proof of an actual and substantial present danger to the public health or safety. Compare Leibowitz v. Bank Leumi Trust Co., 152 A.D.2d 169, 176-78 (N.Y. App. Div. 2d Dept. 1989) (discussing requirement that action must harm public safety), with Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 429-30 (1994) (finding that deterrence may be a proper basis for bringing a CEPA claim). This difference would substantially extend CEPA protection to a

much broader class of employees than the NYWL. It, therefore, constitutes an impermissible unilateral expansion of the Port Authority's liability.

CEPA and the NYWL are also significantly dissimilar with respect to the types of remedies and damages available. CEPA permits recovery of punitive damages, whereas the NYWL does not. Compare N.J.S.A. 34:19-5 and -13, with N.Y. Lab. Law § 740(5); compare also Longo v. Pleasure Prod., Inc., 215 N.J. 48, 57 (2013) (noting that "existing authority indicates that CEPA . . . specifically permits . . . punitive damages"), with Granser v. Box Tree S., 623 N.Y.S.2d 977, 984 (N.Y. Sup. Ct. 1994) (holding that the plaintiff was not entitled to an award of punitive damages if he prevailed under N.Y. Lab. Law § 740). CEPA also permits the assessment of civil fines against the employer, whereas the NYWL has no such provision. See N.J.S.A. 34:19-5(e), -13. These differences, if applied against the Port Authority, would constitute an impermissible unilateral expansion of the Port Authority's liability.

Lastly, CEPA provides for trial by jury, whereas the NYWL does not. Compare N.J.S.A. 34:19-5, with N.Y. Lab. Law § 740(5); compare also Abbamont, supra, 138 N.J. at 425-26 (noting that in amending CEPA, the Legislature provided for jury trials), with Scaduto v. Rest. Assoc. Indus., Inc., 180 A.D.2d

14

458, 459 (N.Y. App. Div. 1st Dept. 1992) (noting that by its express terms, N.Y. Lab. Law § 740(5) "states that it is the court itself which awards relief"). In sum, because CEPA and the NYWL are not complementary or parallel, applying CEPA to the Port Authority would impermissibly subject the agency to single-state legislation.

Because New York and New Jersey do not have complementary or parallel whistleblower legislation, we must determine whether the Port Authority impliedly consented to unilateral state regulation under CEPA. As we stated in Santiago:

> [E]ven though [the Third Circuit Court of Appeals did] not recognize implicit modifications of an interstate compact as the New Jersey Supreme Court might, both jurisdictions require evidence of mutual intent to alter a compact and regulate the bi-state agency, regardless of whether the action taken by the agency is 'external' or 'internal.'
>
> [Santiago, supra, 429 N.J. Super. at 158 n.3 (quoting hip Heightened Independence, supra, 693 F.3d at 357-58 n.3).]

There is no evidence that New York and New Jersey mutually intended to consent to suit under CEPA. To the contrary, the clear and unambiguous language in the states' legislation creating the Port Authority and the lack of complementary and parallel whistleblower statutes confirm that New York and New Jersey did not mutually intend to consent to suit against the

Port Authority under CEPA.  Accordingly, the Port Authority is not subject to suit under CEPA.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16                                                    A-3506-14T1