**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4625-17T1

AYMAN MATARI and SARA
MATARI, his wife,

     Plaintiffs-Appellants,

v.

PLATINUM DOLLZ GENTLEMEN'S
CLUB, 40 BRIGHTON AVE, LLC,
t/a SILK, THOMAS VERLINGO,
and RADOSLAW KULESZA,

     Defendants.

_____

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

     Plaintiff-Respondent,

v.

RADOSLAW KULESZA,
LATARZYNA LITWINOWICZ,
and AYMAN MATARI,

     Defendants.

_____

Argued January 27, 2020 – Decided February 14, 2020

Before Judges Messano, Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket Nos. L-3290-15 and L-2667-16.

Anthony Philip Caivano argued the cause for appellants.

Daniel J. Pomeroy argued the cause for respondent (Pomeroy Heller & Ley LLC, attorneys; Daniel J. Pomeroy and Karen E. Heller, on the brief).

PER CURIAM

In these consolidated personal injury and insurance coverage cases, Ayman Matari (plaintiff) and his wife, Sara Matari,[1] appeal from orders granting New Jersey Manufacturers Insurance Company's (NJM) motion for summary judgment, declaring NJM has no obligation to indemnify defendant Radoslaw Kulesza under a personal liability insurance policy, and denying plaintiff's reconsideration motion.  We affirm.

I.

---

[1] We refer to Ayman Matari as plaintiff for purposes of clarity and because Sara Matari asserted only a per quod claim in the personal injury complaint, and that claim is not pertinent to the issues raised on appeal.  We intend no disrespect in doing so.

A-4625-17T1

Plaintiff filed a complaint alleging that on October 2, 2013, he was injured outside of a Passaic County bar when Kulesza "negligently, . . . recklessly[,]" "and/or purposely assaulted" him. Plaintiff asserted claims against the bar's owner and one of its employees alleging they were negligent by failing to provide adequate security and by serving Kulesza with "alcoholic beverages . . . beyond the point of visible intoxication." Plaintiff also asserted claims against Kulesza, alleging he negligently, recklessly, or intentionally assaulted plaintiff, and he "intentionally, maliciously, [and] willfully assaulted and battered" plaintiff.

NJM later filed a complaint seeking a declaratory judgment "that by the terms and conditions of" a personal liability policy, "no liability indemnity is available to [Kulesza]" based on the assault allegations contained in the personal injury complaint.[2] The court consolidated the personal injury and declaratory judgment actions.

As a result of the October 2, 2013 incident at the bar, Kulesza was charged with aggravated assault on plaintiff and endangering a victim. He was tried before a jury in the criminal action and acquitted of the charges.

---

[2] Kulesza is an insured under an NJM insurance policy issued to his wife.

Following completion of discovery in the consolidated civil action, all of the defendants in the personal injury action moved for summary judgment. The court denied Kulesza's summary judgment motion, noting there were two witnesses who stated they observed Kulesza "hit" or "strike" plaintiff. The court granted summary judgment to the bar and its employee, finding there was no evidence the bar served Kulesza alcohol and plaintiff failed to produce an expert witness on his claim there was a failure to provide adequate security.

NJM also moved for summary judgment on its declaratory judgment claim.[3] NJM's Rule 4:46-2 submissions in support of the motion established the following undisputed material facts.[4]

On October 2, 2013, plaintiff and Kulesza were present at the bar. Plaintiff alleged in his complaint he was at or near the bar "when he was assaulted by . . . Kulesza," but in his responses to NJM's Rule 4:46-2 statement

---

[3] The record on appeal does not include the judgment of acquittal from Kulesza's criminal trial, but the parties do not dispute the jury acquitted him of the charges.

[4] We limit our findings of the undisputed facts to those presented in the statements of material facts submitted to the court in accordance with Rule 4:46-2(a) and (b), and we do not consider or rely on information, evidence, or purported facts that were not presented to the motion court in accordance with the Rule. See Kenney v. Meadowview Nursing & Convalescent Ctr., 308 N.J. Super. 565, 573 (App. Div. 1998) (refusing to consider "factual assertions in [the] appeal that were not properly included in the motion . . . for summary judgment below" pursuant to Rule 4:46-2).

A-4625-17T1

of material facts, plaintiff admits discovery "revealed no evidence to support [his] allegation that his assailant was . . . Kulesza."  Plaintiff testified at his deposition he had no recollection of the events resulting in his injuries, other than he recalls being at the bar with his family members, Mustafa Ihmaid, Oudey Matari, and Rahid Matari.  Those family members testified they were at the bar with plaintiff, but they had no knowledge of the cause of plaintiff's injuries because they were inside the bar and plaintiff suffered his injuries while outside.

Kulesza similarly lacked any knowledge of the events resulting in plaintiff's injuries.  Kulesza testified that although he was present at the bar, he had no recollection of what occurred or of any contact with plaintiff.  In response to NJM's statement of material facts, plaintiff further admitted that during discovery no individual provided an account of what caused plaintiff's injuries, and plaintiff suffered a head injury, but "the exact mechanism of his injury is unknown."

In support of its summary judgment motion, NJM also relied on the sworn testimony of witnesses at Kulesza's criminal trial.[5]  Dr. Ronit Gilad testified he

---

[5]  In their responses to NJM's statement of material facts, plaintiffs did not dispute the accuracy of NJM's recitation of the testimony of the witnesses at the criminal trial.  Plaintiff, however, asserted NJM should not be entitled to rely on the testimony because the criminal trial transcripts were not provided during

examined plaintiff following the bar incident and plaintiff "had a laceration on his lip that was consistent with being punched." Five other witnesses testified they were at the bar on October 2, 2013, but none could identify Kulesza as the individual who caused plaintiff's injuries or explain the manner in which plaintiff's injuries were caused. One of the witnesses, Jorge Beltre, testified he saw "an altercation" outside of the bar, with loud talking that "[e]ventually [progressed] because it led to fists flying," but he did not identify Kulesza as having thrown any punches or being involved in the altercation. Another witness, Michael Aguilar, testified he noticed people arguing, but he did not see anyone get punched. Plaintiff testified at the criminal trial that although he had no recollection of the incident, "he recalled that his injuries were the result of getting hit in the face with a fist."

NJM's statement of material facts also included the applicable provisions of the insurance policy. The personal liability coverage is outlined in Section

_____

discovery. Plaintiff does not argue on appeal it was improper for NJM to rely on the criminal trial transcripts as a source of competent evidence supporting NJM's summary judgment motion. An issue not briefed on appeal is deemed waived. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011). We therefore rely on the sworn testimony provided at the criminal trial, as detailed in NJM's statement of material facts, as a source of the undisputed facts supporting NJM's summary judgment motion.

II, subsection A of the policy titled "Coverage E – Personal Liability," which provides:

> If a claim is made or a suit is brought against an <u>insured</u> for damages because of <u>bodily injury</u> or <u>property damage</u> caused by an <u>occurrence</u> to which this coverage applies, [NJM] will:
>
> > 1. Pay up to [NJM's] limit of liability for damages for which an <u>insured</u> is legally liable; and
> >
> > 2. Provide a defense at [NJM's] expense by counsel of [NJM's] choice, even if the suit is groundless, false or fraudulent . . . .
>
> [(Emphasis in original).]

The policy further defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. [b]odily injury; or b. [p]roperty damage."

The policy also includes an exclusion to its personal liability coverage; Section II, Exclusion E, paragraph 1, entitled "Expected or Intended Injury," provides that personal liability insurance does not apply to:

> <u>Bodily injury</u> or <u>property damage</u>, with respect to all <u>insureds</u>, which is expected or intended by an <u>insured</u> even if the <u>bodily injury</u> or <u>property damage</u>:
>
> > a. is of a different kind, quality or degree than initially expected or intended; or

b. is sustained by a different person, entity, real or personal property than initially expected or intended.

However this Exclusion . . . does not apply to <u>bodily injury</u> resulting from the use of reasonable force by an <u>insured</u> to protect persons or property.

[(Emphasis in original).]

In opposition to NJM's summary judgment motion, plaintiff submitted a "RESPONDING STATEMENT OF ADDITIONAL FACTS PURSUANT TO [RULE] 4:46-2(b)[.]" The additional facts are based on testimony during the criminal trial, including Aguilar's testimony that "people were arguing outside" the bar, and plaintiff's testimony he "was injured by an individual around his height, with brownish hair, dark eyes, and who was bulky."[6] Plaintiff also cited Dr. Gilad's testimony he did not know the cause of plaintiff's injury and plaintiff was "severely intoxicated" at the bar. Moreover, plaintiff described Beltre's testimony that plaintiff "flicked a cigarette at an individual" and Beltre "wasn't sure whether [plaintiff] then continued to aggressively approach other people" at the bar.

---

[6] The summary judgment record does not include a physical description of Kulesza.

Based on the foregoing undisputed facts presented in the parties' Rule 4:46-2 submissions, and after hearing argument, the court granted NJM summary judgment. In its written decision, the court explained "the policy covers liability for injuries that occur by accident," and excludes coverage for "intentional acts." The court found "the only version of the events supported by competent evidence indicates that [p]laintiff's injuries were caused by a punch to the face, whether by . . . Kulesza or some unknown assailant, that occurred during an altercation." The court rejected plaintiff's claim the evidence showed his injuries may have been the result of an accident, noting "[t]he other versions of events suggested by . . . [plaintiff] (including drunken stumbles) are supported by absolutely no competent evidence and cannot be presented to a jury." The court entered an order granting NJM summary judgment, and this appeal followed.

II.

We review an order granting summary judgment applying the same standard as the motion judge. State v. Perini Corp., 221 N.J. 412, 425 (2015); RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). That is, we "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to

9

permit a rational factfinder to resolve the alleged dispute in favor of the non-moving party," which in this case is plaintiff.  <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995).  As part of the analysis, we must determine if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law," <u>Burnett v. Gloucester Cty. Bd. of Chosen Freeholders</u>, 409 N.J. Super. 219, 228 (App. Div. 2009).  It is "[o]nly 'when the evidence "is so one-sided that one party must prevail as a matter of law"' should a court enter summary judgment."  <u>Petro-Lubricant Testing Labs., Inc. v. Adelman</u>, 233 N.J. 236, 256 (2018) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)).

Here, plaintiff has the burden of establishing an entitlement to coverage under the NJM policy.  <u>See</u> <u>Shaler ex rel. Shaler v. Toms River Obstetrics & Gynecology Assocs.</u>, 383 N.J. Super. 650, 662 (App. Div. 2006) ("It is well-settled that the insured bears the burden of establishing that a claim lies within the policy's scope of coverage.").  Plaintiff does not dispute the plain language of the applicable portions of the policy provides coverage only for an "accident"; the policy expressly excludes coverage for injuries that are "intended," and the exclusion does not apply to bodily injury resulting from the insured's use of reasonable force to protect persons or property.  <u>See</u> <u>generally</u> <u>Voorhees v.</u>

A-4625-17T1

Preferred Mut. Ins. Co., 128 N.J. 165, 180-81 (1992) (interpreting insurance policy providing coverage for injuries arising from an "accident" and excluding coverage for "intentional acts").

Plaintiff argues NJM is not entitled to summary judgment because there are genuine issues of material fact as to whether his injuries were caused by an accident and therefore fall within coverage provided under the policy's plain language. More particularly, he claims there are factual disputes as to whether he and Kulesza were involved in an argument; whether Kulesza was holding him back; and whether he may have flicked a cigarette at Kulesza. Plaintiff also claims the court failed to address the conflict between Aguilar's purported statement to the police that Kulesza threw a punch and his trial testimony that he did not know if a punch was thrown.[7]

Plaintiff theorizes that "if the jury were to believe that there was a melee where [plaintiff] and [Kulesza] had incidental contact that resulted in [plaintiff]

---

[7] Plaintiff's reliance on Aguilar's purported statement to the police is misplaced for two reasons. First, the parties' Rule 4:46-2 statements of material facts do not make any reference to the purported statement, and our review of the court's summary judgment order is limited to the undisputed facts established pursuant to the Rule. Sklodowsky, 417 N.J. Super. at 657. Second, the statement constitutes inadmissible hearsay, N.J.R.E. 802, and a genuine issue of material fact is raised solely by competent admissible evidence, Sullivan v. Port Auth. of N.Y. and N.J., 449 N.J. Super. 276, 279-80 (App. Div. 2017).

A-4625-17T1

falling to the ground and suffering an injury," there would be coverage under the policy. He also argues "if the jury believed that [plaintiff] 'flicked a cigarette' and lunged at defendant," the policy would provide coverage because plaintiff would have "used reasonable force to repel" Kulesza. Plaintiff further argues that the reasonable force exception to the intended act exclusion applies based on his supposition that "Kulesza was defending himself in some other way, and that a punch was a reasonable way to do so." Last, plaintiff hypothesizes "there could have been a verbal disagreement" during which Kulesza "negligently trip[ped] and [fell] forward colliding with [plaintiff] and forcing him to the ground causing the injuries," or plaintiff's and Kulesza's bodies "could have collided" and caused plaintiff to fall and sustain his injuries.

Plaintiff's suggested scenarios—each premised on the notion his injuries were caused accidentally or by Kulesza's use of reasonable force—find no support in the undisputed facts established in the parties' Rule 4:46-2 submissions. There is no competent evidence plaintiff's injuries were caused by falling to the ground or were the result of an accident, or that plaintiff lunged at Kulesza or took any other action allowing Kulesza's use of reasonable force— indeed, any physical force—against him. In fact, there is no evidence explaining the manner in which plaintiff suffered his injuries other than his trial testimony

that some unidentified individual punched him in the face with a fist. That evidence, however, is untethered to any other evidence either establishing or permitting a reasonable inference that the punch was not intended and therefore was an accident, or that the punch constituted the use of reasonable force under the circumstances presented.

"Competent opposition [to a summary judgment motion] requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)). "Unsubstantiated inferences," like those asserted by plaintiff here, are insufficient to defeat a summary judgment motion otherwise supported by competent evidence. Cortez v. Gindhart, 435 N.J. Super. 589, 606 (App. Div. 2014).

We evaluate the evidence and undisputed facts "in light of the burden of persuasion that applies if the matter goes to trial." Brill, 142 N.J. at 540. Here, plaintiff bore the burden of establishing undisputed facts entitling him to coverage, Shaler, 383 N.J. Super. at 662, but the undisputed facts presented to the motion court only show only plaintiff is unable to sustain that burden. That

failure requires the conclusion NJM is entitled to judgment as a matter of law. See Brill, 142 N.J. at 540.

Any argument made by plaintiff that we have not expressly addressed is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION