# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4778-16T6
A-5364-16T6

STATE OF NEW JERSEY,

        Plaintiff-Respondent,

v.

DONOVAN WHITE,

        Defendant-Appellant.

_____

STATE OF NEW JERSEY,

        Plaintiff-Respondent,

v.

LARRY BOSTIC,

        Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **December 5, 2017**
>
> **APPELLATE DIVISION**

        Argued October 30, 2017 – Decided December 5, 2017

        Before Judges Messano, O'Connor, and Vernoia.

        On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-05-1216 in A-4778-16.

        On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Complaint No. W-2017-1470-0614 in A-5364-16.

        Laura B. Lasota, Assistant Deputy Public Defender, argued the cause for appellant

Donovan White in A-4778-16 (Joseph E. Krakora, Public Defender, attorney; Ms. Lasotas and Christiane Cannon, Assistant Deputy Public Defender, of counsel and on the briefs).

Nathan R. Perry, Assistant Deputy Public Defender, argued the cause for appellant Larry Bostic in A-5364-16 (Joseph E. Krakora, Public Defender, attorney; Mr. Perry, of counsel and on the brief).

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent in A-4778-16 (Robert D. Laurino, Acting Essex County Prosecutor, attorney; Mr. Ducoat, of counsel and on the briefs).

Andre R. Araujo, Assistant Prosecutor, argued the cause for respondent in A-5364-16 (Jennifer Webb-McRae, Cumberland County Prosecutor, attorney; Mr. Araujo, of counsel and on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

In these appeals, now consolidated in a single opinion, we consider for the first time the procedural and substantive provisions of the Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to -26 (the CJRA), that are applicable when a previously released defendant allegedly violates one or more conditions of release imposed by the court. We provide some background.

### As to A-4778-16

Defendant Donovan White was arrested on January 28, 2017, and charged with second-degree robbery and other offenses.

Defendant's score on the public safety assessment (PSA) for both failure to appear (FTA) and new criminal activity (NCA) was five, the second-highest possible score in each category, and Pretrial Services recommended against his release. The State, however, did not move to detain defendant. The judge ordered defendant's release with the conditions that he: refrain from committing any new offense; avoid contact with the victim; report to Pretrial Services every week, alternately in person and by phone; remain on home supervision with an electronic monitoring device (EMD); avoid the location where the robbery occurred; appear for all scheduled court proceedings; and immediately notify Pretrial Services of any change of address, telephone number, or other contact information. The grand jury indicted defendant on May 9, 2017.

On May 25, Pretrial Services filed a violation report, indicating that defendant had permitted his EMD to "die" on several occasions and to remain dead for several days by failing to keep it charged. Apparently, the State moved to revoke defendant's release or modify the conditions of release. R. 3:26-2(c).[1]

On the return date of June 5, 2017, the prosecutor said that in light of his conversation with defense counsel, the

---

[1] The motion is not in the appellate record.

State would not seek detention or modification. The prosecutor noted that the EMD had "shorted out," and that defendant had been "forced out" of his mother's home after an argument, which had "led to the bracelet not being charged." Defense counsel argued against any change in conditions under these circumstances, and the judge agreed. The prosecutor indicated, nevertheless, that any further problems would lead to the State's filing another motion to revoke defendant's release.

Pretrial Services filed a second violation report on June 21, 2017. It alleged that: defendant's EMD was "dead" on three separate dates after the June 5 hearing; defendant failed to report "for instruction" on the proper use of the device after the hearing and after acknowledging receipt of a message to report; numerous "satellites" detected defendant's presence at various hours at three different locations in Hoboken and Newark; and defendant failed to update his home address. Pretrial Services recommended revocation of defendant's release, and the State moved for that relief.

On Friday, July 7, the prosecutor and defense counsel appeared before the judge; defendant was not present. There was some confusion regarding the date set for the revocation hearing, with defense counsel and the prosecutor both indicating that the hearing was set for Monday, July 10. Defense counsel

indicated that she had been in touch with defendant, and he intended to be present on Monday and to produce a witness and evidence. Both attorneys agreed to delay the hearing.

However, unbeknownst to counsel or the court, defendant reported to Pretrial Services later in the day on July 7, and was told to report to court. He did so. Before the judge, defense counsel explained that instead of reporting to Pretrial Services telephonically as required, defendant had appeared in person because of continued problems with his EMD. Over defendant's objection, the judge immediately considered the State's motion to revoke defendant's release.

Defense counsel sought an adjournment, arguing that defendant was not prepared to respond because he had received notice that the motion would be heard on July 10. Defendant intended to call his mother as a witness to confirm that he was residing with her and to address "some of the concerns . . . about the [EMD] being defective," but she was not available to testify until Monday. Defendant also wanted to present evidence from his employer to show that he had been working consistently and that his presence at the three locations cited in the violation report had been work-related. Counsel stressed that in the nearly six months since defendant had been released on conditions, he had not been arrested for a new offense, had not

been in contact with the victim, had not been in the area of the offense and had not failed to appear for a court date.

The judge agreed that defendant's conduct did not offend "two of the primary goals of pretrial release," which were to guard against the commission of a new offense and the failure to appear in court. However, the judge stated, "the conditions of release are not limited to that. There are certain prophylactic conditions placed upon the accused to provide . . . reasonable assurances that . . . there will be an appearance as required, there will be no new offenses, and there will be no obstruction of justice."

The judge noted that Pretrial Services had initially recommended detention based on defendant's PSA score, and that the recommendation established a "prima facie case which would satisfy the finding by clear and convincing evidence that there is [sic] no conditions or combinations of conditions that will reasonably assure the defendant's appearance, the protection of the safety of the community."

The judge took note of defendant's prior record; his subsequent indictment, which established probable cause that defendant committed the crimes charged; and the strength of the State's evidence. The judge found that after the June 5 hearing, defendant continued to allow the EMD to die, thus

6

inhibiting Pretrial Services from monitoring his location; failed to report to Pretrial Services on June 14; and was present at the three locations noted in the violation. The judge stated:

> [E]ssential to the proper functioning of the criminal justice reform is the ability to monitor compliance with release conditions. Despite having the opportunity earlier in response to the first notice of violation, [sic] the information before the Court amply demonstrates by a preponderance that there has been a violation of the home detention provision. And this Court is no longer comfortable with the continued release of [defendant].
>
> And I find by clear and convincing evidence through operation of the prima facie case provision based upon the information set forth in the PSA that there are no conditions or combinations of conditions that will reasonably assure the defendant's appearance, the protection of the safety of the community.

The judge entered the July 7, 2017 pretrial detention order from which defendant now appeals.

## As to A-5364-16

On June 22, 2017, defendant Larry Bostic was charged with five counts of endangering the welfare of children and five counts of invasion of privacy. The State alleged that defendant surreptitiously video recorded female juvenile employees disrobing and changing into work uniforms at defendant's business. Although defendant's PSA scores were two (FTA) and

one (NCA), and Pretrial Services had recommended his release on his own recognizance, the judge ordered defendant detained.

Defendant appealed, and, on July 24, 2017, a panel of our colleagues vacated the detention order and remanded the matter, concluding that the judge had failed to provide written factual findings in support of the order. The remand hearing took place on August 2.[2]

With little discussion, the judge ordered defendant's release on "Level 3, monitoring, home detention and a bracelet." He advised defendant that except to go to the doctor, shop for food or come to court, he could not leave his home. The judge ordered defendant to appear at Pretrial Services the next day upon his release from jail.[3] He also: ordered defendant to have no contact with the victims; requested the prosecutor to supply the victims' addresses; told defendant that his "bracelet" would "set off an alert" if he entered the 1000-feet "zone of exclusion" around the victims; and ordered defendant to have no contact with anyone under the age of eighteen.

---

[2] Although the transcript of the remand hearing indicates it took place before a different judge, this is an apparent error. The order following remand bears the signature of the same judge who issued the detention order, and he referenced our remand order during the course of the hearing.

[3] Even though the charges emanated from Cumberland County, defendant was apparently incarcerated in the Camden County jail.

The order of release ostensibly detailed these and other conditions imposed on defendant. However, the order erroneously provided: "Defendant shall come within 1000 feet of any victim inclusion zones." Moreover, the addresses of the victims were not in the order, and the record fails to reveal that those locations were ever provided to defendant prior to his release.

As instructed, defendant appeared at Pretrial Services on August 3, 2017. He was immediately taken into custody based upon a violation report, which indicated that the assistant criminal division manager had contacted local police when defendant's EMD demonstrated that he had "failed to remain in his home," was "roaming the city of Vineland most of the day," and had entered a victim exclusion zone for one minute. In the violation report, Pretrial Services wrote that defendant was

> currently on the highest level of supervision. According to the structure response grid, entering a victim exclusion zone is a major violation as [is] leaving your approved home address. There are no conditions that can be placed on the defendant that will ensure his compliance.

The record before us indicates no arrest warrant was issued, and defendant never appeared before a judge until August 9, which was the return date for the State's motion to revoke defendant's release.

A different judge presided over the revocation hearing. The prosecutor proffered the violation report from Pretrial Services and a Google map, which she claimed demonstrated that defendant "was essentially moving all around the city of Vineland in violation of his conditions." Defense counsel initially tried to explain that defendant did not know "the location of the victim exclusion zone." She claimed that defendant had gone to the police department a few blocks from his home to retrieve his wallet and keys.

Defendant insisted on speaking, so the judge placed him under oath. Defendant said that he had tried unsuccessfully to retrieve his wallet and keys from the local police department, a few blocks from his home. He relied upon an elderly friend to drive him from his home in Vineland to Pretrial Services in Bridgeton. Defendant said that he had no control over the route his friend had taken, and he had no knowledge where any of the five alleged victims lived.

The prosecutor's retort was that as the "proprietor of the business . . . it's assumed that [defendant was] probably going to know where these kids are living." The record fails to demonstrate that the prosecutor had complied with the court's earlier request to supply those addresses, or that the pretrial release order actually served on defendant included the victims'

addresses or described the parameters of the victim exclusion zones.

Referencing the violation report, the judge found that defendant had been in the exclusion zone where two victims lived in the same apartment complex, and that defendant had "failed to remain in [his] home as required." He concluded that defendant was

> obviously . . . not in compliance and . . . there's no manner in which we can keep [him] in compliance.
>
> At this point the State has overcome its burden in establishing that there's no amount of monetary bail, non-monetary conditions or combinations thereof which would ensure that . . . you[ would] appear in court[,] . . . not present a danger to the community[] and . . . not obstruct justice.

The detention order indicated that the judge made these findings by clear and convincing evidence. The order also cited the "nature and circumstances of the offense," including defendant's violation of conditions of pretrial release; the weight of the evidence, specifically the violation report and Google map; the risk defendant posed to witnesses and the community; and Pretrial Services' recommendation of detention.

Defendant filed this appeal.

I.

The CJRA "'shall be liberally construed' to effect its purpose:  to rely primarily on 'pretrial release by non-monetary means to reasonably assure' that a defendant will 'appear[] in court when required,' will not endanger 'the safety of any other person or the community,' and 'will not obstruct or attempt to obstruct the criminal justice process.'"  State v. Robinson, 229 N.J. 44, 55 (2017) (quoting N.J.S.A. 2A:162-15).  With certain exceptions, or unless the prosecutor moves for pretrial detention, the CJRA requires the court to release a defendant on his personal recognizance or unsecured appearance bond following arrest.  N.J.S.A. 2A:162-17(a).  Only if those conditions are inadequate "to assure a defendant's return to court and protect both public safety and the integrity of the criminal justice process," may the judge impose "non-monetary conditions that are the least restrictive conditions necessary."  Robinson, supra, 229 N.J. at 55 (citations omitted).

Compliance "with all conditions of release" is another stated purpose of the Act.  N.J.S.A. 2A:162-15.  These conditions may include requiring a defendant to refrain from committing another crime, from contacting the alleged victim of the crime, from contacting witnesses named in the release order or subsequent court order, and other non-monetary conditions.

N.J.S.A. 2A:162-17(b)(1)(a) to (c) and (b)(2); R. 3:26-2(b)(2) and (3).

When a defendant is released on conditions,

> the court shall, in the document authorizing the eligible defendant's release, notify the eligible defendant of:
>
> (a) all the conditions, if any, to which the release is subject, <u>in a manner sufficiently clear and specific to serve as a guide for the eligible defendant's conduct</u>; and
>
> (b) the penalties for and other consequences of violating a condition of release, <u>which may include the immediate issuance of a warrant for the eligible defendant's arrest</u>.
>
> [N.J.S.A. 2A:162-23(a)(1)(emphasis added).]

If the court orders a defendant's release subject to conditions, it may subsequently review the conditions on its own motion, or on motion by either party, and may modify the conditions or impose new conditions upon a showing of a material change in circumstances. R. 3:26-2(c)(2).

The State may seek revocation of a defendant's release if he or she violates a restraining order or a condition of release, "or upon [the court's] finding of probable cause . . . that the . . . defendant has committed a new crime while on release." N.J.S.A. 2A:162-24; accord R. 3:26-2(d)(1). Pending disposition of a motion to revoke release, a defendant shall remain released and "the court shall issue a notice to appear to

compel the appearance of the eligible defendant at the detention hearing."  N.J.S.A. 2A:162-19(d)(2).

At the revocation hearing, the defendant shall be represented by counsel, provided with all discovery, afforded the right to testify and present witnesses, cross-examine witnesses who appear and "present information by proffer or otherwise."  R. 3:26-2(d)(2).  The CJRA does not set forth the State's burden of proof at the revocation hearing, but Rule 3:26-2(d)(1) provides that the State need only prove the violation of a condition of release by a preponderance of the evidence.  However,

> upon a finding that the eligible defendant while on release has violated a restraining order or condition of release, or upon a finding of probable cause to believe that the eligible defendant has committed a new crime while on release, [the court] may not revoke the eligible defendant's release and order that the eligible defendant be detained pending trial unless the court, after considering all relevant circumstances including but not limited to the nature and seriousness of the violation or criminal act committed, finds clear and convincing evidence that no monetary bail, non-monetary conditions of release or combination of monetary bail and conditions would reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, or that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process.

[N.J.S.A. 2A:162-24 (emphasis added); see also R. 3:26-2(d)(1).]

Thus, N.J.S.A. 2A:162-24 conditions revocation of release and pretrial detention on a finding by clear and convincing evidence that no conditions of release will reasonably assure the three goals of the Act. In other words, even after the State proves a violation, the court must still consider whether under all relevant circumstance, the clear and convincing evidence proffered by the State requires detention. The CJRA does not allow for detention based solely on a finding that the defendant violated the terms of release.

Although the CJRA and Rule 3:26-2 are silent regarding the procedure to be followed at a revocation hearing, we conclude that the State's proffer of the Pretrial Services violation report alone may be sufficient to establish, by a preponderance of the evidence, that a violation occurred. We reach this conclusion for several reasons.

In State v. Ingram, 230 N.J. 190, 213 (2017), the Court held that at the initial detention hearing under the CJRA, the State may establish probable cause by proffer without producing a live witness. The probable cause standard, which applies to initial detention hearings and revocation hearings based upon the commission of a new offense, and the preponderance standard, which is applicable to revocations based on violations of

conditions, are similar in nature and precede the ultimate finding of whether clear and convincing evidence supports detention. Compare State v. Gibson, 218 N.J. 277, 292 (2014) (explaining that probable cause is a well-grounded suspicion that a crime has been committed), with State v. Williams, 93 N.J. 39, 78 (1983) (providing: "Preponderance of evidence . . . is evidence sufficient to generate a belief that the conclusion advanced is likely. It has been stated in terms of reasonable probability.") (citations omitted).

Further, the CJRA makes no distinction between a motion to detain filed immediately following arrest or at a subsequent time. See N.J.S.A. 2A:162-19(a) (explaining that a motion to detain may be filed at any time before or after release). Indeed, a motion for revocation pursuant to N.J.S.A. 2A:162-24 is simply a motion to detain with the added requirement that (1) the State prove probable cause that the defendant committed a new crime, or prove by a preponderance of the evidence that the defendant violated a release term or restraining order; and (2) the nature and severity of the new crime or the violation, in addition to all other circumstances, clearly and convincingly establishes that detention is appropriate.

Under the federal release revocation statute, which is somewhat different from N.J.S.A. 2A:162-24, the court may revoke release upon motion by the government if the judge

> (1) finds that there is —
>
>     (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>
>     (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that—
>
>     (A) based on the factors set forth in [18 U.S.C.A. § 3142(g)], there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
>     (B) the person is unlikely to abide by any condition or combination of conditions of release.[4]
>
> [18 U.S.C.A. § 3148(b).]

Federal courts take a similar approach and allow the government to prove a release-term violation by proffer. United States v. LaFontaine, 210 F.3d 125, 131 (2nd Cir. 2000); United States v. Aron, 904 F.2d 221, 227 (5th Cir. 1990); United State v. Davis,

---

[4] Unlike the federal statute, the CJRA does not authorize pretrial detention based upon a finding that the defendant is unlikely to abide by any conditions of release.

A-4778-16T6

845 F.2d 412, 415 (2nd Cir. 1988). C.f. Ingram, supra, 230 N.J. at 205 (explaining that because the CJRA is similar to its federal counterpart, New Jersey courts should "give careful consideration to the federal case law that interprets the Bail Reform Act," 18 U.S.C.A. §§ 3141 to 3156).

Lastly, we reject the argument, explicitly made by White and implicitly made by Bostic, that the State must prove a defendant's violation of a condition of release was purposeful or intentional. Nothing in the CJRA or our Court Rules supports that claim. However, evidence that the violation is the result of inadvertence, negligence or is otherwise excusable is clearly a "relevant circumstance[]" in weighing "the nature and seriousness of the violation," and ultimately whether the evidence clearly and convincingly demonstrates detention is warranted in light of all other relevant circumstances. N.J.S.A. 2A:162-24.[5]

---

[5] In a somewhat analogous circumstance, our Criminal Code explicitly provides that the State must either (1) establish probable cause that the defendant committed a new crime while on probation, or (2) "inexcusably failed to comply with a substantial requirement imposed as a condition" of probation at a violation of probation (VOP) hearing. N.J.S.A. 2C:45-3(a)(4) (emphasis added). If the alleged violation is a failure to pay a fine or make restitution, the court must find a willful violation. N.J.S.A. 2C:45-3(a)(4). We note further that VOP hearings must be on written notice to the defendant, who has the right "to hear and controvert the evidence against him, to offer evidence in his defense, and to be represented by counsel."
(continued)

We now apply these basic principles to the facts presented in these two appeals.

## II.

As to defendant White, we first address the judge's reliance in part upon the "no release" recommendation made by Pretrial Services in the PSA generated when defendant was arrested in January. As noted, the State never sought detention at that time, but, in reaching his revocation decision, the judge considered Pretrial Services' recommendation as prima facie evidence sufficient to overcome the presumption of release. R. 3:4A(b)(5).

Before us, defendant argues that the prima facie evidence provision only applies to the initial detention decision, and the State contends that the provision is inapplicable to a release revocation hearing because the presumption of release only applies at the initial detention hearing. We disagree with both parties and conclude that, in the circumstances of this case, where the court never made an initial detention decision,

(continued)
N.J.S.A. 2C:45-4. And, the State may rely on a proffer of evidence or hearsay to meet its burden. State v. Reyes, 207 N.J. Super. 126, 138 (App. Div.), certif. denied, 103 N.J. 499 (1986). We note, however, that the Court recently heard argument as to whether the trial court erred in accepting hearsay testimony that the defendant committed a new offense at the defendant's violation of probation hearing. State v. Noah Mosley, Docket No. A-24-16 (argued November 28, 2017).

the judge properly considered Pretrial Services' recommendation as prima facie proof overcoming the presumption of release.

Initially, Rule 3:4A(b)(5) codifies the CJRA's presumption of a defendant's release, except for those crimes to which a presumption of detention applies. See N.J.S.A. 2A:162-18(b) (presumption of release); N.J.S.A. 2A:162-19(b)(1) and (2) (rebuttable presumption of detention for certain crimes). The Rule also permits, but does not require, the judge to consider the Pretrial services recommendation against release as prima facie evidence sufficient to overcome the presumption. R. 3:4A(b)(5); see also See State v. C.W., 449 N.J. Super. 231, 262 (App. Div. 2017) (noting consideration of the recommendation as prima facie evidence to rebut the presumption of release is discretionary). N.J.S.A. 2A:162-19(a) provides that a motion to detain may be filed at any time prior to trial, and the Rule does not limit its application to motions filed prior to the initial hearing.

We find further reason to reject the State's position in Article 1, paragraph 11, of our Constitution, the amendment that preceded enactment of the CJRA, which provides: "All persons shall, before conviction, be eligible for pretrial release." Furthermore, N.J.S.A. 2A:162-15 requires that the CJRA "shall be liberally construed to effectuate the purpose of primarily

relying upon pretrial release by non-monetary means to reasonably assure" its goals.

We specifically do not address a situation where the court initially rejects the PSA recommendation of "no release" and releases the defendant on conditions.[6] In such situations, the CJRA requires the court entering an order "contrary to a recommendation made" in the PSA to explain in writing its decision to release. N.J.S.A. 2A:162-23(a)(2). We recognize that the court's subsequent invocation of Rule 3:4A(b)(5) to surmount the presumption of release raises the very real possibility of inconsistent decision-making following re-litigation of the same or similar issues. See State v. K.P.S., 221 N.J. 266, 276 (2015) ("The law-of-the-case doctrine 'is a non-binding rule intended to prevent relitigation of a previously resolved issue' in the same case.") (citing Lombardi v. Masso, 207 N.J. 517, 538 (2011)). Here, however, the State never sought defendant's detention so the judge never considered

---

[6] We tread carefully because of the Court's pending decision in State v. S.N., Docket No. A-60-16 (argued on September 11, 2017), where the use of Pretrial Services' recommendation of no release as prima facie evidence under Rule 3:4A(b)(5) was raised during argument before the Court, and State v. Hassan Travis, Docket No. A-7-17 (argued on November 29, 2017), where Pretrial Services' recommendation in the context of the Rule was squarely considered.

the PSA's recommendation of "no release" prior to the revocation hearing.

Defendant White argues that the judge "misapplied the law on revocation of pretrial release," essentially contending that any violations proven during the revocation hearing were insufficient to establish by clear and convincing evidence that detention was required.  He underscores that the violations did not include another arrest for a crime, contact with the victim, or appearance at the location of the crime.  Further, he appeared at every court proceeding and reported to Pretrial Services as required.  In short, he claims that there was no basis to find he posed a risk to the community or the administration of justice, or that he would fail to appear in court when required.  We choose not to address those arguments because reversal is required for other reasons that follow, and defendant may renew those and other arguments on the record produced at the remand hearing we now order.

As noted, the CJRA requires that a defendant receive proper notice of the revocation hearing.  N.J.S.A. 2A:162-19(d)(2). Here, on July 7, both the prosecutor and defense counsel believed the revocation hearing on the State's motion was to take place on Monday, July 10.  The judge said the "notice of violation and order" of the court set July 7 as the date.

However, the notice of violation in the record, filed in support of the State's motion, does not set the date; the referenced court order is also not in the record. Moreover, the State's notice of motion, which is in the record, was not served on defense counsel until July 6, making it unlikely that the hearing was set for the next day.

In short, the record does not reasonably support the conclusion that defendant was on notice that the hearing was to take place on July 7. This is amply borne out by defense counsel's later assertion that defendant mistakenly reported to Pretrial Services on July 7 and only appeared in court because he was told on that day by Pretrial Services to report to court.

The failure to provide proper notice was particularly prejudicial in this case because the judge denied defendant's reasonable request to delay the hearing until the following Monday. The judge did not provide an explanation for denying the adjournment request, although we may surmise that he was concerned about defendant's alleged prior violations and the second violations report, filed less than one month after the earlier June 5 court hearing.

However, Rule 3:26-2(d)(2) clearly provides that a defendant has the right to call witnesses and present evidence at a release revocation hearing. Here, defendant made clear

that he intended to call his mother, who was unavailable on July 7 but would be available on July 10, to explain the problems he continued to have with his EMD and to testify that defendant had returned to her home. He also wished to produce evidence that his work required him to be at certain locations outside of his home, including those detected by satellite. This evidence, if believed by the judge, certainly rebutted the State's evidence regarding "the nature and seriousness of the violation." N.J.S.A. 2A:162-24.

We do not suggest that a judge should surrender his or her broad discretion to control the revocation hearing and limit the testimony and evidence that is relevant. However, federal courts have recognized that the government's sole reliance on a proffer at the revocation hearing may affect the probative value and weight of the evidence on the ultimate decision of whether detention is appropriate. See LaFontaine, supra, 210 F.3d at 132 (noting that while the government may proceed by proffer, it usually does not rely solely on a proffer where its request to revoke release is premised upon danger to the community); Aron, supra, 904 F.2d at 227 ("The inability of the defendant to cross-examine a declarant is relevant to the probative value of the proffered evidence . . . ."). It follows that a defendant's ability pursuant to Rule 3:26(d)(2) to call witnesses and

produce evidence to rebut the State's revocation proofs has increased significance when the only proof of a violation is the report of Pretrial Services, as it was in this case.

The denial of the adjournment under these circumstances was a mistaken exercise of the judge's discretion.[7] See C.W., supra, 449 N.J. Super. at 255 ("An appellate court can also discern an abuse of discretion when the trial court fails to take into consideration all relevant factors and when its decision reflects a clear error in judgment.") (citing State v. Baynes, 148 N.J. 434, 444 (1997)). We therefore reverse and vacate the detention order, and remand the matter to the trial court to conduct a new hearing on the State's motion to revoke White's release.

Although the CJRA requires a previously released defendant to remain so pending the detention hearing, N.J.S.A. 2A:162-19(d)(2), we do not order defendant's immediate release in this case. If the State wishes to proceed on its motion to revoke

---

[7] We reject the State's suggestion, made at oral argument, that defendant's challenge to the denial of his adjournment request was not properly before us because it was contained in a footnote in his brief. See Sullivan v. Port Auth. of N.Y. and N.J., 449 N.J. Super. 276, 281 (App. Div. 2017) (explaining that arguments raised in a footnote will not be considered on appeal). In arguing that the evidence did not clearly and convincingly establish that detention was appropriate, defendant repeatedly referenced throughout his brief the contrary evidence that may have been produced, but was not, because the adjournment request was denied.

defendant's release, it shall notify the judge and defense counsel forthwith, and the judge shall provide notice and conduct the revocation hearing within ten days of our judgment, or otherwise release defendant subject to appropriate conditions. We do not retain jurisdiction.

### III.

As to defendant Bostic, we initially express grave concerns about the procedures employed prior to the actual revocation hearing. Defendant was arrested when he reported to Pretrial Services for the first time as ordered. He had not committed another crime and there was no outstanding arrest warrant, see N.J.S.A. 2A:162-23(a)(1)(b) (permitting the "immediate issuance of a warrant for the . . . defendant's arrest" for "violating a condition of release"), yet defendant was taken into custody immediately and not brought before a judge for five days. At oral argument before us, the prosecutor could not identify what authority permitted the State to proceed in such fashion, and we can find none ourselves.

The CJRA requires that a defendant must be provided with "all conditions . . . to which the release is subject" "in a manner sufficiently clear and specific to serve as a guide for . . . defendant's conduct." N.J.S.A. 2A:162-23(a)(1)(a). There is no evidence that the prosecutor actually supplied the

addresses of the victims, as the judge asked her to do, and the actual order, which mistakenly stated, "Defendant shall come within 1000 feet of any victim inclusion zones[,]" does not provide them. In short, nothing in the record demonstrates that Pretrial Services or the State ever supplied defendant with the parameters of the victim exclusion zones.

At the revocation hearing, defendant denied any knowledge of the victims' addresses. The State only argued that defendant must have known the victims' home addresses because they worked in his business. Although the judge specifically found that defendant had entered the exclusion zone for two of the victims, the judge did not find that defendant had actually known where or how extensive those zones were. Under these circumstances, the State failed to prove by a preponderance of the evidence that defendant had violated that condition of his release.

The judge also found that defendant had violated another condition of his release by "fail[ing] to remain in [his] home as required." In fact, the first judge, on remand, had specifically ordered defendant to report to Pretrial Services, which was located in a town different from defendant's residence, upon his release from jail or the next day if he were released late in the day. Defendant complied by reporting the

day after the remand hearing and, in doing so, <u>had</u> to leave his home.

The State's proof at the revocation hearing was limited to the Pretrial Services' violation report and the Google Map. The Google map, which is in the record, does not demonstrate that defendant was wandering or "roaming the city of Vineland most of the day," contrary to the assertion in the violation report. Therefore, the State failed to prove by a preponderance of the evidence this second purported violation of a condition of release.

On Bostic's appeal, we reverse, vacate the detention order and order his immediate release on appropriate conditions following a hearing, which the Law Division judge shall conduct forthwith.

Reversed and remanded in both appeals.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4778-16T6