**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1756-18T3

TEN WEST APPAREL, INC.,

     Plaintiff-Appellant,

v.

MUESER RUTLEDGE
CONSULTING ENGINEERS,
ENTACT, LLC, and SAMSUNG
FIRE & MARINE INSURANCE
CO., LTD.,

     Defendants-Respondents.

_____

        Argued December 11, 2019 – Decided February 28, 2020

        Before Judges Koblitz, Whipple and Gooden Brown.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3680-16.

        John T. Lillis, Jr. argued the cause for appellant (Kennedy Lillis Schmidt & English, attorneys; John T. Lillis, Jr., on the brief).

        Scott K. Winikow argued the cause for respondent Mueser Rutledge Consulting Engineers (Donovan

Hatem LLP, attorneys; Scott K. Winikow and Lauren M. Ippolito, on the brief).

Greg Keith Vitali argued the cause for respondent Entact, LLC (Lindabury McCormick Estabrook & Cooper, attorneys; Greg Keith Vitali, of counsel and on the brief).

Adam Stark argued the cause for respondent Samsung Fire & Marine Insurance Co., Ltd. (Fleischner Potash, attorneys; Adam Stark, on the brief).

PER CURIAM

Plaintiff Ten West Apparel, Inc. appeals from three orders entered on November 15, 2018, granting respective motions for summary judgment to defendants Mueser Rutledge Consulting Engineers (MRCE), Entact, LLC, and Samsung Fire and Marine Insurance Co., Ltd. (Samsung).  We affirm.

Ten West is a clothing wholesaler and a tenant in a Jersey City warehouse which is the subject of this appeal.  The warehouse is owned by Mid-Newark, L.P.  Solomon Gadeh wholly owns both Ten West and Mid-Newark, and his son Teddy Gadeh, works closely with him.

Ten West's next-door neighbor, paint manufacturer PPG Industries, Inc., had allowed chromium to seep into and contaminate the soil beneath and around its building.  Pursuant to a 2009 consent decree between PPG and the New Jersey

Department of Environmental Protection, PPG agreed to investigate and remediate the contaminated soil.

PPG hired MRCE to design and oversee the remediation project. MRCE advised that sheet piles should be installed to quarantine and remove the contaminated soil. Sheet piles are large metal fences driven into the ground around the perimeter of an excavation site to shore up the site walls and prevent the surrounding soil from collapsing. Sheet piles are installed with a pile driving technique where a vibrating hammer is used to force the sheet piles deep into the ground. Entact was hired to install the sheet piles.

On July 7, 2014, prior to installation, MRCE conducted a pre-construction condition survey of the Ten West warehouse and observed numerous cracks along the wall, noticed that the concrete floor was sloping and cracked, and that the roof was leaking in several places. MRCE determined sheet piles should and could be installed fifteen feet from the Ten West warehouse.

Entact installed sheet piles over the course of four days in September. On the fourth day, Ten West's warehouse manager felt the building shake and noticed a crack had emerged on the warehouse's northeast wall. Ten West hired Alan Sare, an engineer, to assess the damage. Sare opined that the pile driving caused a differential settlement of the soil beneath the northeast end of the Ten

West warehouse, causing an imbalance in the warehouse's foundation and an expansion of the pre-existing cracks along the northeast wall. The sheet piles were driven about fifteen feet from the warehouse's eastern wall and Sare opined this was too close. Sare also observed that the vibrations caused the roof's membrane to crack.

MRCE was immediately alerted of the damage. In an email, an MRCE supervisor explained that a "[c]rack has opened up, but [it] was pre-existing for sure and already patched. Previous weak point [that was] easily disturbed by additional[] increment of settlement or lateral displacement. Sheet piling appears to be the cause. . . ."

In October 2014, PPG offered to make $100,000 worth of repairs to the warehouse for the damage. The Gadehs rejected PPG's offer because the proposed fixes were "merely cosmetic."

During this time, PPG was negotiating for access to the warehouse property to further its remediation efforts. The Gadehs resisted, and PPG offered to buy the warehouse so they could demolish the warehouse rather than work around the existing structure. Negotiations stalled over the price, and in September 2015, PPG filed a complaint and requested an order requiring Ten West to vacate the warehouse.

4

A year later, in September 2016, Ten West filed this suit against MRCE, Entact, and Samsung. Ten West alleged MRCE and Entact negligently damaged Ten West's building, and that Samsung improperly denied coverage. Ten West represented it owned the warehouse property, and Mid-Newark was not named as a plaintiff in the complaint. In December 2016, Ten West and Mid-Newark filed a counterclaim against PPG seeking damages, in part, for sheet pile damage. On the case information statement accompanying the answer and counterclaim, Ten West and Mid-Newark answered "Yes" to the question "Do you anticipate adding any parties (arising out of the same transaction or occurrence)?" However, no other parties were added to the counterclaim. Thus, the Gadehs maintained concurrent lawsuits against the parties involved in the remediation, claiming the same damages in both cases.

Ten West had also filed a claim with Samsung, its insurance carrier, for the damage caused by the sheet pile. Ten West's adjustor estimated repairs would cost $921,615.63. Ten West's general commercial liability coverage policy with Samsung contained the following earth movement exclusion:

> B. Exclusions
>
>> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of

A-1756-18T3

any other cause or event that contributes concurrently or in any sequence to the loss.

. . . .

b. Earth Movement

. . . .

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

. . . .

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused.

The policy also contained the following relevant exclusions:

B. Exclusions

. . . .

2. We will not pay for loss or damage caused by or resulting from any of the following:

. . . .

6

d. (1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

. . . .

(4) Settling, cracking, shrinking or expansion

. . . .

3. We will not pay for loss or damage caused by or resulting from any of the following . . . .

c. Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, constructions, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

7

Samsung's own investigator observed cracks along the northern and eastern walls and concluded they were either caused or exacerbated by the sheet pile installation. The investigator also concluded the roofing issues were related to deferred maintenance, not building movement.

Samsung then denied coverage, because the damage fell under the earth movement exclusion of Ten West's policy. Samsung agreed with Sare's conclusion that the sheet pile installation caused soil movement, which in turn caused the damage. Samsung also cited the pre-existing cracks and the deficient sheet pile installation as triggering exclusions under policy subsections B(2)(d)(4) and B(3)(c)(1) – (4).

In the interim, on February 2, 2018, PPG settled with Ten West and Mid-Newark, agreeing PPG would purchase the warehouse property for $10 million dollars. Ten West was permitted to occupy the warehouse—rent free—until 2020. PPG agreed to maintain the warehouse until Ten West vacated the property but disclaimed any responsibility to repair the damage caused by the sheet piles. In exchange, Ten West and Mid-Newark agreed not to lease any portion of the warehouse and warranted there were no other tenants of the warehouse aside from Ten West. Ten West and Mid-Newark were permitted to continue leasing the warehouse's parking lot to Family Senior Health LLC, an

elder care facility.[1]  Additionally, Ten West released PPG from any past or future claims relating to the warehouse property.

In its suit against MRCE, Entact, and Samsung, Ten West estimated damages at $921,615.13—the amount of its denied insurance claim.  In response to an interrogatory, Ten West alleged damages of $1,161,000, which included the estimated $921,000 repair cost plus an additional $240,000 arising out of Ten West's inability to use the damaged portion of the warehouse.

In a deposition, after Teddy Gadeh was asked whether, in fact, Ten West was deprived of beneficial use of the warehouse, he testified Ten West had not ceased operations since the sheet pile incident.  He also explained Ten West was using the damaged portion of the warehouse, which amounted to about 25,000 of the warehouse's 75,000 square feet, for storage.  At no point since the sheet pile incident did Ten West need to rent space elsewhere to store overflow merchandise.

Teddy Gadeh was also pressed on whether Ten West was currently claiming the same damages it had during the PPG litigation.  When asked whether the property damage alleged in the PPG counterclaim was the same as the current claim against MRCE, Entact, and Samsung, he responded, "It's the

---

[1]  The closing occurred on March 24, 2018.

same claim, but it has nothing to do with the settlement agreement." When asked whether the cause of the damage was the same, Gadeh answered, "Correct, the cause can be the same, I'm assuming yes." He also acknowledged the warehouse was never repaired.

Nevertheless, Ten West claimed lost rent damages. The Gadehs hired Maurice Stack to perform a real estate valuation on the warehouse's damaged 25,000 square feet. Stack opined Ten West lost $1.3 million in rent between 2014 and 2019. However, in his deposition, Stack admitted his valuation did not take into account the PPG settlement agreement, and that he only considered the use and occupancy rights of the warehouse "in a vacuum." Stack also did not consider how Ten West's rent-free occupancy affected his valuation. All told, Ten West sought approximately $2.46 million in damages from defendants.

In October 2018, MRCE, Entact, and Samsung each moved for summary judgment. At argument, the motion judge asked why Mid-Newark, the warehouse's owner, was not a party. Ten West agreed that Mid-Newark should have been named a plaintiff and orally moved for leave to file an amended complaint, but the motion judge denied leave because Ten West did not file a formal cross motion.

On November 6, 2018, Ten West filed an order to show cause seeking leave to file an amended complaint to add Mid-Newark as a plaintiff, as well as to bring a lost rent claim. Ten West's attorney certified the Gadehs had failed to explain to him the relationship between Mid-Newark and Ten West, and he had also been unaware that Mid-Newark owned the warehouse. The motion judge denied Ten West's order to show cause, noting an order to show cause should not be a substitute for regular motion proceedings. Moreover, the motion judge pointed out that while both parties realized in January 2018 that Mid-Newark was the owner of the warehouse, a motion for leave to file an amended complaint was only improperly made in a responsive summary judgment brief.

On November 15, 2018, the motion judge granted defendants' summary judgment motions. On the negligence claim, the motion judge found Ten West did not prove damages. There was pre-existing damage to the building and, per the settlement, Ten West was relieved of responsibility to make repairs. Moreover, the lost rent claim was speculative because no tangible efforts were made to rent the property.

The motion judge also concluded Ten West's negligence claim was barred by the entire controversy doctrine noting Ten West was currently claiming the same damages as it did in its PPG counterclaim. Thus, Ten West should have,

but failed to, add MRCE or Entact to the PPG litigation as third-party defendants.

Entact argued it was immune from liability under the Spearin[2] doctrine, which provides contractors cannot be held liable for defects in plans they are merely carrying out. Although the motion judge granted summary judgment because Ten West failed to prove damages, she further found no evidential support that Entact deviated from the plans it was hired to carry out, or that it was independently negligent.

As for the Samsung policy, the motion judge found Ten West's claim was excludable pursuant to the earth movement exclusion in its policy. Thus, the motion judge granted all three summary judgment motions and dismissed Ten West's complaint.

On November 30, 2018, Ten West moved for leave to amend its complaint after the motions for summary judgment were granted, but it was denied as moot. This appeal followed.

On appeal, Ten West argues the trial court erred in finding no damages and in denying leave to add Mid-Newark as a plaintiff. Ten West also argues

---

[2] United States v. Spearin, 248 U.S. 132 (1918).

error in the court's application of the entire controversy doctrine, the Spearin doctrine, and the earth movement exclusion. Because we agree with the motion judge's finding that Ten West did not prove damages, we need not address the other arguments.

We "review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The evidence must be viewed in "the light most favorable to the non-moving party." Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012).

The motion judge found Ten West failed to prove actual damages as a matter of law. Ten West's proofs do not distinguish between pre-existing damage caused by deferred maintenance and the damage allegedly caused by MRCE and Entact's negligence. Instead, Ten West seeks a sum equivalent to

13

the cost to fully repair the warehouse, the perceived loss of beneficial use, and compensation for theoretical lost rent.

Ten West argues it is indisputable that the sheet pile incident damaged the warehouse, and for that fact alone Ten West's negligence claim should have survived summary judgment. According to Ten West, the motion judge applied an overly strict standard for proof of damages where, in New Jersey, the jury is permitted to estimate the exact amount of damages caused by a tortfeasor.

Ten West cites to its adjustor's conclusion that it would take $921,615.63 to repair the warehouse and argues this constitutes proof of damages with reasonable certainty. Ten West argues St. Louis, LLC v. Final Touch Glass & Mirror, Inc., 386 N.J. Super. 177 (App. Div. 2006) supports the proposition that Ten West's decision not to make repairs does not preclude it from recovering an amount equal to what it would cost to repair the warehouse. Ten West argues the settlement agreement released PPG from repairing the warehouse, which means Ten West is still responsible for repairs.

Ten West also argues it is entitled to damages equal to the warehouse's diminution in value due to the sheet pile incident. Ten West claims the warehouse's value was diminished by $980,000, based on Solomon Gadeh's personal valuation of the warehouse. Solomon Gadeh claimed that before the

sheet pile incident the warehouse was worth at least $10,980,000, and that he and his son sustained a $980,000 loss when they sold the warehouse to PPG.

Finally, Ten West argues it proved $1.3 million dollars in lost lease revenue, and that the motion judge erred by concluding the claim was speculative because Ten West failed to take any tangible steps towards leasing the warehouse. We reject these arguments.

"To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Sullivan v. Port Auth. of N.Y. & N.J., 449 N.J. Super. 276, 283 (App. Div. 2017) (alteration in original) (quoting Puder v. Buechel, 183 N.J. 428, 440–41 (2005)). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)).

A negligence claim should only be given to a jury if there is a genuine dispute of material fact concerning "the act of negligence itself and a consequential injury resulting therefrom." Montag v. Bergen Bluestone Co., 145 N.J. Super. 140, 144 (App. Div. 1976). "Mere knowledge of a negligent act is insufficient to institute a cause of action for negligence; it is essential that a plaintiff also demonstrate that he or she has suffered actual injury or damages . . . ." White v. Mattera, 175 N.J. 158, 165 (2003).

Although "[d]amages need not be proved with precision where that is impractical or impossible[,]" Borough of Fort Lee v. Banque Nat'l de Paris, 311 N.J. Super. 280, 291 (App. Div. 1998), they must be proven "with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate." Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420 (App. Div. 1987). "The plaintiff . . . bears the burden of proof and it is the responsibility of the plaintiff to provide for the jury some evidentiary and logical basis for calculating or, at least, rationally estimating a compensatory award." Caldwell v. Haynes, 136 N.J. 422, 436 (1994) (quoting Huddell v. Levin, 537 F.2d 726, 743 (3d Cir. 1976)). "[T]he plaintiff must proffer evidence of loss that is not hypothetical or illusory. It must be presented with some certainty demonstrating that it is capable of

calculation, although it need not be demonstrated in all its particularity to avoid summary judgment." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005). Thus, the record need only "support[] a reasonable estimate of damages, based upon more than mere speculation[.]" Fin. Servs. Vehicle Tr. v. Panter, 458 N.J. Super. 244, 251 (App. Div. 2019) (quoting Borough of Fort Lee, 311 N.J. Super. at 291).

Ten West alleges the sheet pile incident caused $921,615.63 in damages to the warehouse, but this number does not distinguish between pre-existing damage to the warehouse and that caused by the sheet pile incident. Ten West seeks compensation for all the repairs the warehouse needed both before and after the sheet pile incident. Thus, the motion judge correctly found, as a matter of law, Ten West did not submit a reasonable estimate of damages.

Neither the Sare reports nor the Samsung investigation offered any comparison between the damage before and after the sheet pile incident. As a result, there is no reliable or reasonable estimate of damages caused by the sheet piles.

MRCE's pre-construction condition survey described numerous cracks along the wall, noted that the concrete floor was sloping and cracked, and that

the roof was leaking in several places. The sheet pile incident exacerbated existing damage, but no competent proof demonstrated it caused new damage.

The true measure of damages is somewhere between that identified in the pre-construction condition survey and what was observed in the adjuster's report. Yet, Ten West claims MRCE and Entact are responsible for all the damage to the warehouse, even damage unrelated to their negligence. Ten West's proofs do not demonstrate what, exactly, MRCE and Entact were responsible for. Not only did Ten West fail to provide a reasonable estimate of damages, but it did not prove MRCE and Entact's negligence caused actual damages.

Ten West's reliance on St. Louis does not alter this conclusion. In that case, the defendants were a construction manager and sub-contractor tasked with building the plaintiff's house. 386 N.J. Super. at 179. The sub-contractor negligently punctured several drain and vent pipes, and the plaintiff's expert estimated repair costs to total at least $774,000. Id. at 179-80. While the plaintiff's lawsuit was pending, it sold the house for $2.5 million, $300,000 less than its prior value. Id. at 179, 191. The trial judge permitted both parties to submit proof of damages, and the plaintiff argued the cost of repairs—$774,000—was the true measure of damages, while the defendants' real estate

expert testified that the difference between the pre-damage valuation and sale price was the proper way to gauge damages. Id. at 190-91. The jury sided with the plaintiff, and, on appeal, the defendants argued the trial judge should only have permitted the jury to hear evidence on diminished value because the plaintiff sold the house before making repairs. Id. at 191-92. We disagreed, noting compensatory damages are intended to make the plaintiff whole, and do not necessarily depend on whether repairs are feasible. Id. at 192. Thus, as long as the plaintiff doesn't receive a windfall, both measures of damages were appropriate and it was up to the jury to decide which to choose. Id. at 193.

Ten West cites St. Louis to argue that just because it was no longer responsible for making repairs to the warehouse per the settlement, it could still collect compensatory damages. This misses St. Louis's point. Compensatory damages are intended to make the plaintiff whole, and any award should not result in a windfall. 386 N.J. Super. at 188, 192. Ten West requests compensation for all the damage to the warehouse, regardless of whether it was related to MRCE or Entact's conduct. In other words, Ten West seeks a windfall equal to the damage caused by its own neglect of the property. See Velop, Inc. v. Kaplan, 301 N.J. Super. 32, 66 (App. Div. 1997) (rejecting restoration cost as a measure of damages because the plaintiff's property, worth roughly $3.7

million, would cost $5.4 million to restore); Correa v. Maggiore, 196 N.J. Super. 273, 283–86 (App. Div. 1984) (reversing a jury award that gave the plaintiff more in compensatory damages than the purchase price of the property). Again, Ten West's failure to accurately determine the damage caused by MRCE and Entact dooms its case. Additionally, Ten West's diminution in value and lost rent claims, as well as a claim for loss of beneficial use, are only relevant if Ten West is able to prove the extent to which the warehouse was damaged.

Ten West's claim for $1.3 million in lost rent is entirely speculative and unsubstantiated by competent proof that Ten West, or the Gadehs, actually had a tenant in place prior to the sheet pile incident. Thus, summary judgment for MRCE and Entact was properly granted. The only proof of their intent was an alleged conversation, where they broached the prospect but ultimately decided against it. Such a "conclusory and self-serving assertion[] . . . [is] insufficient to overcome the [summary judgment] motion." Sullivan, 449 N.J. Super. at 283 (alteration in original) (quoting Puder, 183 N.J. at 440–41).

Ten West also alleged approximately $240,000 in damages related to loss of beneficial use of the damaged portion of the warehouse. However, Ten West does not here address the issue or factor the figure into its claimed damages. Therefore, the issue is deemed waived. See Sklodowsky v. Lushis, 417 N.J.

Super. 648, 657 (App. Div. 2011); Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 5 on <u>R.</u> 2:6-2 (2019).

The motion judge found that Ten West presented no evidence tending to show Entact deviated from MRCE's plans or was otherwise independently negligent. Sare's reports focus on MRCE's mistakes but do not comment on whether Entact was independently at fault. Ten West argues that the <u>Spearin</u> doctrine, which Entact cites in support of its argument that it bears no liability for any alleged damages, only applies to government contracts and serves to limit a contractor's liability to the contracting party. In <u>Spearin</u>, a contractor sued the federal government for payment on a contract. 248 U.S. at 133. Due to defects in the property, the contractor stopped work, and the government argued the contractor was responsible for remedying the property defects. <u>Id.</u> at 135. The Supreme Court explained the government's request was outside the contract's specifications and if a "contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications." <u>Id.</u> at 136.

In New Jersey, the <u>Spearin</u> doctrine has not explicitly been applied outside government contracts. <u>See</u> <u>P.T. & L. Const. Co., Inc. v. Dep't of Transp.</u>, 108 N.J. 539, 548–49 (1987). The Supreme Court provided no indication <u>Spearin</u>

21

applied to negligence cases. Nevertheless, in this case, the <u>Spearin</u> doctrine provides a helpful articulation of a sub-contractor's duty of care and the standard of proof for breach of that duty.

To sustain a cause of action for negligence, a plaintiff must establish four elements: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages[.]" <u>Polzo v. Cty. of Essex</u>, 196 N.J. 569, 584 (2008) (alterations in original) (quoting <u>Weinberg v. Dinger</u>, 106 N.J. 469, 484 (1987)). A "plaintiff bears the burden of establishing those elements 'by some competent proof[.]'" <u>Davis v. Brickman Landscaping, Ltd.</u>, 219 N.J. 395, 406 (2014) (citation omitted) (quoting <u>Overby v. Union Laundry Co.</u>, 28 N.J. Super. 100, 104 (App. Div. 1953)). "In most negligence cases, the plaintiff is not required to establish the applicable standard of care." <u>Ibid.</u> However, when the "'jury is not competent to supply the standard by which to measure the defendant's conduct,' the plaintiff must instead 'establish the requisite standard of care and [the defendant's] deviation from that standard' by 'present[ing] reliable expert testimony on the subject.'" <u>Id.</u> at 407 (first quoting <u>Sanzari v. Rosenfeld</u>, 34 N.J. 128, 134–35 (1961); and then quoting <u>Giantonnio v. Taccard</u>, 291 N.J. Super. 31, 43 (App. Div. 1996)).

22

Here, Ten West's proofs fail to show Entact's installation of the sheet piles fell below an identifiable standard of care. After conducting tests, MRCE concluded sheet piles should be installed fifteen feet from Ten West's warehouse with a vibratory hammer. Indeed, Entact installed the sheet piles consistent with MRCE's specifications, and, notably, Ten West failed to produce an expert report opining that either Entact deviated from MRCE's plans or that it was otherwise negligent. Rather, Sare's reports criticize MRCE's specifications but do not offer an opinion on whether Entact's installation was somehow faulty.

Sare discussed the soil conditions beneath the warehouse and, based on his observations, concluded that the sheet piles should have been installed at least thirty feet away from Ten West's warehouse. Based on that conclusion, Sare opined MRCE's testing and plans deviated from industry norms and that MRCE and Entact were careless.

However, Sare does not explain whether Entact knew or should have known it was installing the sheet piles too close to the warehouse. Moreover, Sare does not independently evaluate Entact's actual installation of the sheet piles nor does he make a judgment as to whether the sheet piles were installed incorrectly. As Entact argues, Ten West failed to produce an expert in sheet pile installation to prove Entact's conduct was negligent. At best, Sare's reports

23

suggest MRCE, but not Entact, fell below a standard of care. Therefore, Ten West's proofs fail to show Entact breached a duty of care.

Finally, the motion judge correctly found Ten West's insurance claim fell under the policy's earth movement exclusion.

To argue for coverage, Ten West distances itself from Sare's opinion that the warehouse was damaged by differential soil settlement caused by the sheet piles installation. Ten West asserts a distinction between the exacerbation of existing cracks caused by the sheet pile installation versus cracks caused by differential soil settlement. The difference being the cause of the damage— some of which was due to deferred maintenance—not the consequence, which was the cracking.

Samsung contends this distinction is irrelevant. Both Sare and Samsung's expert agreed that the warehouse was damaged due to differential soil settlement beneath the east wall. This cause of loss clearly fits under the earth movement exclusion.

Whether the claimed damages were due to deferred maintenance or MRCE and Entact's faulty workmanship, both causes are excluded. Sare's reports concluded MRCE's sheet-pile-installation plan was defective, which brings the cause of the loss under exclusion (B)(3)(c) of the policy. Similarly, Samsung

points out the warehouse was deteriorated before the sheet pile incident, which clearly falls under the "wear and tear" exclusion.

We give "special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 594 (2001). "[W]e first examine the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) (quoting Zacarias, 168 N.J. at 595). "If the language is clear, that is the end of the inquiry." Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 207 (2017) (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). We must refrain from "writing a better insurance policy than the one purchased." President v. Jenkins, 180 N.J. 550, 562 (2004).

Exclusionary clauses "are typically construed narrowly with the onus 'on the insurer to bring the case within the exclusion.'" Mem'l Props., LLC, 210 N.J. at 528 (quoting Flomerfelt v. Cardiello, 202 N.J. 432, 442 (2010)). "Exclusionary clauses are presumed valid if they are 'specific, plain, clear, prominent and not contrary to public policy.'" Ibid. (quoting Princeton Ins. Co.

v. Chunmuang, 151 N.J. 80, 95 (1997)).  "If the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'"  Ibid. (quoting Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537 (1990)).

Ten West's arguments are undermined by Sare's reports.  Sare opined that the warehouse walls cracked because of differential settlement of the soils beneath it.  The differential soil settlement was caused by the vibrations within the soil triggered by the vibratory hammer used to install the sheet piles, and Samsung's expert agreed with this determination.  Thus, the cause of loss falls under the earth movement exclusion.

Ten West's attempt to draw a distinction between damage caused by soil movement versus damage caused by the sheet pile installation does not alter this conclusion, as the exclusion's prefatory language renders any additional or contributing causes of the damage irrelevant.  Subsection (B)(1) of the exclusion portion of the policy states, in part, "Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."  Samsung identifies this language as an "anti-concurrent/anti-sequential" clause, which excludes coverage if one or more enumerated causes contributes to the loss, even if otherwise-covered causes also contributed to the

loss. If an excluded cause contributed to the loss, the exclusion applies. Thus, Ten West's attempt to argue that the sheet piles, not the differential soil settlement, caused the damage is irrelevant.

All parties agree that the warehouse walls cracked when the sheet piles were installed. Because the cracks in the warehouse walls were caused by differential soil settlement, Ten West cannot credibly argue that the sheet piles alone caused the damage, as if the sheet piles themselves made contact with the warehouse. The cause of loss unambiguously falls under the earth movement exclusion.

Even if the earth movement exclusion were not applicable, the faulty workmanship provision, subsection (B)(3)(c), provides a backstop. The exclusion's modifying phrase—"of part or all of any property on or off the described premises"—means the damage caused by the sheet pile installation, even though it occurred on an adjacent property, is not covered.

To the extent Ten West's claim included damage not caused by the sheet pile incident, Samsung was entitled to deny coverage pursuant to the "wear and tear" exclusion under subsection (B)(2)(d). Ten West's adjustor, Samsung's expert, and MRCE's pre-construction condition survey all observed that the warehouse was damaged prior to the sheet pile incident and that the deterioration

was caused by deferred maintenance. In particular, the roof needed a full replacement before the sheet pile incident caused the membrane to tear. Thus, the "wear and tear" exclusion unambiguously applies.

All additional arguments introduced by plaintiff are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION